**John E. ADAMS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Ernest J. STUCKEY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Melvin R. ROOTS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 20547, 20548, 20549.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 7, 1967.

Decided June 21, 1968.

Petitions for Rehearing Denied Sept. 9, 1968.

Mr. Warren C. Zwicky, (appointed by this court), Washington, D. C., for appellant in No. 20,547.

Mr. George C. Dreos, (appointed by this court), Washington, D. C., for appellant in No. 20,548.

Mr. David E. Varner, (appointed by this court), Washington, D. C., for appellant in No. 20,549.

Mr. A. Lee Fentress, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Allan M. Palmer, Asst. U. S. Attys., were on the brief, for appellee.

Mr. James A. Strazzella, Asst. U. S. Atty., also entered an appearance for appellee.

---

29. Harriman Broadcasting Co., *supra* note 4, 9 F.C.C.2d at 738, 10 R.R.2d at 989.

Mr. Scott R. Schoenfeld, Asst. U. S. Atty., also entered an appearance for appellee in No. 20,549.

Before BURGER, WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

These three appeals are from convictions under a joint indictment founded upon the robbery of a liquor store. Two issues are common to each appeal. They are (1) the existence of probable cause for arrest and accompanying search, and (2) the admissibility of testimony of a police station identification made during a period of illegal detention in violation of Rule 5(a), FED.R.CRIM.P.[1] The former involves problems of intra-police department communication; and we find no error in the District Court's ruling on this point.[2] We cannot agree, however, with its conclusion in respect of the asserted Rule 5(a) violation, which leaves us with no alternative but to reverse the judgments of conviction and to remand for a new trial. *Cf.* Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957).

### I

Appellants were arrested a few minutes after the police, at 1:40 P.M. on November 5, 1965, received a report of an attempted robbery of a North Carolina Avenue liquor store in the District of Columbia. They were taken from the point of arrest to the Robbery Squad offices at Police Headquarters. Arriving there at 2:00 P.M., they were put in several police line-ups during the next two hours. At 4:00 P.M. they were booked for the attempted robbery for which they were arrested, but there was no presentment to a magistrate on that charge that day. Remaining in custody, they were placed in several more police lineups between 4:00 P.M. and 8:00 or 9:00 that evening, and again the following morning between 8:30 and 10:00 A.M. It was in this latter series of exposures that they were identified by the owner of another liquor store, Whitaker's Wines and Liquors, as the persons who had robbed his store four days earlier, that is to say, November 2, 1965. At 10:00 A.M. on November 6, 1965, they were presented to a magistrate on the charge for which they had been arrested and booked, namely, the attempted robbery of the North Carolina Avenue store. Prosecution of that charge was apparently not pressed, however, inasmuch as the convictions appealed from are based upon an indictment for the robbery of the Whitaker store.

No challenge was made to the complainant's in-court identification of appellants, but a pre-trial motion was made to suppress testimony by Whitaker that he had first made an identification at the second day's line-ups. A hearing was held, and it was urged upon the District Court, as here that the line-up identification was the fruit of a period of

---

1. Two of the appellants advance a due process objection to an in-court identification because of the conditions under which a police line-up was held. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). But this issue was not raised in the District Court, where the relevant facts could have been explored out of the presence of the jury, and the court could have made findings and conclusions as to whether there was a due process violation, or an independent basis for the identification making any such violation harmless beyond a reasonable doubt. *See* Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The same appellants complain of the denial of motions for acquittal but we find no error in the trial judge's conclusion that the evidence was such as to warrant submission to the jury. Appellant Stuckey alone presses certain other alleged errors in the course of the trial which we do not find persuasive.

2. Although the police dispatch sent from the scene of the alleged attempted robbery was somewhat confusing, we think that the arresting officers, upon hearing it, had sufficient reason to believe that appellants had been involved in an attempted armed robbery. The validity of the arrest involved in this case is also sustained in the cases of Stuckey and Roots v. United States, Nos. 20648 and 20649, *decided this day.*

illegal detention because of "unnecessary delay" within the meaning of Rule 5(a). At that hearing, the police testimony was that the arrest was made without warrant and only upon the probable cause supplied by the report of the attempted robbery at the North Carolina Avenue store. Upon arrival at Police Headquarters, so the police testimony goes, appellants were "advised of their rights" and then questioned for two hours about a number of unsolved, or "open," holdups. A number of line-ups were held throughout this period and until eight or nine o'clock that evening.

In the first of such line-ups, which means at some point between 2:00 and 4:00 P.M., appellants were identified by a witness from the North Carolina Avenue store as the perpetrators of the attempted robbery there. Several more line-ups followed in which appellants were viewed by a number of complaining witnesses in other robberies. After two hours of this, appellants were booked for the attempted robbery for which they were arrested. Line-ups continued until 8:00 or 9:00 that evening. Kept at Police Headquarters overnight, line-ups were resumed the next morning, and more complaining witnesses in still more open cases were brought in. One of these was Whitaker, who identified appellants as the robbers of his store on November 2. Presentment of appellants to a magistrate was then made on the attempted robbery charge for which they had been arrested and booked the day before.

At the trial, Whitaker was first examined by the prosecution about the circumstances of the robbery. He was next asked to relate the fact of his identification of appellants at Police Headquarters eight months before. Only after this did he make an in-court identification.[3] A police officer also recounted in detail Whitaker's identification of appellants at Police Headquarters. It is the testimony as to the out-of-court identification that is at issue here.

## II

The Government does not here contend that there was no violation of Rule 5(a). It argues, rather, that the exclusionary rule of *Mallory* is confined to testimonial statements, and that that rule does not encompass identifications made during a period of unnecessary delay. It relies upon earlier cases in this court assertedly to that effect.[4] But no one of these cases involves the admissibility of testimony of an identification made at a police line-up during a period of delay in presentment prompted solely by a purpose to try to connect the defendant with crimes other than the one for which he has been arrested. These cases do variously indicate that this court does not regard a Rule 5(a) violation as automatically flowing from a police line-up or other effort to check the defendant's relationship to the crime for which he was arrested on probable cause. *Lewis*, for example, involved a handwriting sample, the availability of which the court felt could not have been affected by prompt presentment. There is a dictum

---

3. We say there was an in-court identification, although it requires considerable effort to derive it from the record. This was apparently the consequence of the prosecutor's preoccupation with proving the line-up identification, the importance of which he stressed in this response to the trial judge's query as to how necessary it was to go into the matter of the line-up:

Usually in these cases, since the case now is in July, an identification made some three days after the robbery at headquarters I think is very important in so far as the jury is concerned. In

other words, an identification in the courtroom I believe is not as important as one made three days after the event by the complainant.

4. Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817 (1967); Kennedy v. United States, 122 U.S.App.D.C. 291, 353 F.2d 462 (1965); Williams v. United States, 120 U.S.App.D.C. 244, 345 F.2d 733 (1965); Copeland v. United States, 120 U.S.App.D.C. 5, 343 F.2d 287 (1964); Mitchell v. United States, 114 U.S.App. D.C. 353, 316 F.2d 354 (1963); Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (1959).

in Mitchell v. United States, 114 U.S.App. D.C. 353, 316 F.2d 354 (1963), to the effect that, even if the delay for this purpose is too long, testimony of the identification is admissible if it was not the fruit of a testimonial admission. But this all falls far short of holding that arrest may be made for one crime, the detention continued beyond the limits of Rule 5(a) for investigatory purposes *vis-a-vis* other crimes, and the evidence obtained during such secondary detention used to convict of such other crimes.

Here, the lawful basis for appellants' arrest and detention rested solely on the probable cause for the belief that they had committed an attempted robbery on November 5 at the North Carolina Avenue store. There was no probable cause to detain them under arrest for other matters. Rule 5(a) provides that presentment without unnecessary delay shall be made on the charge for which they were arrested. To continue their custody without presentment for the purpose of trying to connect them with other crimes is to hold in custody for investigation only, and that is illegal; its operative effect is essentially the same as a new arrest and, if not supported by probable cause, it is an illegal detention.

It will not do to say that Rule 5(a) is not involved because appellants were not prosecuted on the charge for which they were arrested, booked, and eventually presented. The purpose of Rule 5(a) is to get persons lawfully arrested out of the police station and before a magistrate. At least in those cases where, as

here, delay in presentment succeeds in turning up complicity in another and more serious crime than the one for which probable cause to arrest exists, the Rule can be made irrelevant by failing to prosecute the crime for which the arrest was made. This is not an available technique.

On the precise facts shown by this record, we think the effect of Rule 5(a) is to convert, at least as of 4:00 P.M. on the afternoon of appellants' arrest, their continued detention at the police station into an unlawful arrest without probable cause in respect of the crime for which they were convicted. It is not, thus, the precise scope of the *Mallory* exclusionary rule which is determinative here but, rather, the sweep of the general policy of excluding evidence gathered during a period of detention following upon an unlawful arrest.[5] The applicable case among our precedents is Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1959), in which this court held that fingerprints taken from one illegally arrested must be excluded, and where it espoused the principle that *anything* of evidentiary value produced by such detention is proscribed. Speaking for the court, Judge Hastie said (at p. 467 of 262 F.2d):

> In these situations it is deemed a matter of overriding concern that effective sanctions be imposed against illegal arrest and detention and the risks of overreaching inherent in such action. Even though highly probative and seemingly trustworthy evidence is ex-

---

5. In *Mallory* only the admissibility of a confession was in issue, and what the Supreme Court said about exclusion can be · read solely with reference to that fact. But the policy of using an exclusionary rule as a deterrent to improper police conduct goes back to McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942). Between *McNabb* and *Mallory*, but after the advent of Rule 5(a), the Second Circuit held that the Supreme Court's exclusionary rule applied not alone to confessions but to "all evidence obtained by federal agents through access to persons while detained in violation of Rule 5(a)." United States v. Klapholz, 230 F.2d 494, 498, cert. denied, 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1454 (1956). Although, as indicated in the text, we do not find it necessary to address ourselves here to the relationship of the *Mallory* exclusionary rule to non-testimonial evidence, we note that a like question, in a case involving unnecessary delay in presentment in violation of a state statute, appears to be involved in a recent grant of certiorari by the Supreme Court. Palmieri v. Florida, cert. granted, 392 U.S. 920, 88 S.Ct. 2287, 20 L.Ed.2d 1382 (U.S. May 28, 1968).

cluded in the process, this loss is thought to be more than counterbalanced by the salutary effect of a forthright and comprehensive rule that illegal detention shall yield the prosecution no evidentiary advantage in building a case against the accused. All of this is bottomed on the Constitution itself. The Fourth Amendment makes protection of the individual against illegal seizure or arrest a constitutional imperative.

The concept of what is, in legal contemplation, a "divisible detention" is not, in our view, extraordinary.[6] Indeed, it seems to be a necessary one if the subversion of the purposes of Rule 5(a) is not to be made the handmaiden of the constitutionally defective arrest for investigation. An arrest made on probable cause can bring a man lawfully into the hands of the police, but that detention does not, absent compliance with Rule 5(a), continue to be lawful for all purposes, including the investigation of his possible connection with other crimes.

Armed robberies of the kind here involved are rightly regarded as a grave threat to the peace and safety of the community, and the police are properly sensible of their responsibility to try to solve them. The police work here in respect of the robbery attempt was alert and effective, and we have given it scope by our ruling on probable cause. What we lack power to do is to give absolution in respect of what became, by reason of the Rule 5(a) violation, a purely investigatory detention and hence, as we have noted, one tantamount to an illegal arrest the fruits of which may not be used under *Bynum*. The police have, of course, a legitimate interest in seeking to explore the possible relationships between persons apprehended under such circumstances as were appellants, and other open crimes of a similar nature. The facts of life with respect to liquor store robberies in this community today suggest that there may be a not improbable connection between some of those robberies and persons caught in the act of fleeing from an abortive attempt to rob a liquor store. But, had the police heeded Rule 5(a) and taken appellants after booking before a magistrate, it is by no means certain that the police could not legally have arranged for other victims to view appellants in line-ups. Such line-ups would have to meet due process standards, and to include the op-

---

6. Judge Youngdahl recognized this as long ago as 1961. In United States v. Meachum, D.C., 197 F.Supp. 803, the defendant was arrested for robbing one Turner. Prior to presentment a line-up was held for Turner's benefit. When Turner proved unable to identify the defendant, the latter was not released but was kept in custody for more line-ups involving other robberies. At such a showing, another robbery victim identified him. Although this was followed by a confession which was the subject of a motion to suppress, Judge Youngdahl, assuming *arguendo* that there was probable cause for taking the defendant initially into custody, said:

> Without deciding whether it was proper, under the rule, for a lineup to be held on the Turner charge, it was decidedly improper for preliminary proceedings on that charge to be delayed for a lineup and questioning about another charge for which no probable cause was or is now manifested and for which an arrest

without a warrant has been made * * *.

Two of our cases resemble this one in that an initial custody for one crime was the avenue to indictment and conviction of another. In Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961), where the trial court itself refused to admit testimony of the kind at issue here, namely, the fact of the out-of-court identification, we expressed the gravest reservations about the practice of "lengthy detention for the purpose of rounding up complaining witnesses so that they may view a suspect" who is himself lawfully in custody by reason of an arrest on probable cause for one crime. These reservations were vigorously and expressly reaffirmed in Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666 (1963), although there even the initial arrest was found to be one for investigation.

portunity to have counsel present.[7] Once brought under judicial authority by virtue of the presentment to a magistrate commanded by Rule 5(a), the police could invoke the aid of that authority to make the prisoner reasonably available for line-up identification in respect of other crimes for which there is less than probable cause to arrest.

That effort not having been made here, we cannot adjudicate in this instance the propriety of such procedure; nor pronounce upon it in the abstract. It appears to be one of those areas where the police require skillful and imaginative legal planning, bottomed upon cooperative utilization, rather than utter disregard, of judicial power, and designed to achieve legitimate ends by means which have some appeal in terms of their concern for statutory and constitutional protections. What we do say is that, until that kind of effort has been made and established to be unavailing, we do not find an adequate substitute for it in barren reiteration of the proposition that the only way the police can function under Rule 5(a) is to ignore it.

We emphasize that there is no question before us on this appeal as to the fact of a Rule 5(a) violation, nor that the line-up identification was made in the course of it. The division between the parties is solely as to the admissibility, absent the presentment required by Rule 5(a), of that line-up identification in the trial of a charge for which it is not claimed that a lawful arrest had been made. In deciding against admissibility, we emphasize that what the defendant acquires by that presentment is, first, *judicial* advice of his rights, including the provision of counsel; and, second, the opportunity to regain his freedom forthwith by persuading the magistrate that there is no probable cause to hold him for the crime for which he was arrested. These are important legal rights which Rule 5(a) was designed to secure—so important, indeed, that the Supreme Court has ruled that the exclusion of otherwise admissible evidence is not too high a price to pay to assure their availability to all persons.

Reversed and remanded for a new trial.

BURGER, Circuit Judge (concurring):

I concur without reservation in the result reached by the court in this case. I file this separate statement only to indicate that I have grave doubt that the notion of a "divisible arrest" is a fruitful concept and I fear it may tend to confuse the basic issue. Indeed, I do not know precisely what it means. I question that it is helpful to make tentative and ambiguous "probes" at a concept in an area where accepted words of art have well settled meaning.

To my mind, the importance of the investigation of crimes other than that for which the original arrest was made is not that there may be something resembling a new "arrest," but that the period of "unnecessary delay" forbidden by Fed.R.Crim.P. 5(a) has then been reached. Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested. However, when delay of presentment to the magistrate is for the purpose of investigation of *other* crimes, then there is no doubt that the "delay" has become "unnecessary."

---

7. The trial in this case occurred after Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), thereby assuring appellants of the provision of the right to counsel at an early stage of their detention and certainly no later than presentment. That right now comprehends the opportunity to have counsel present at police line-ups to assure that they are held under conditions calculated to give a firm basis to any identifications made. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

When we reach the question of whether testimony describing a lineup identification made during such unnecessary delay can be admitted at trial, the fact that the later investigation focuses on crimes other than that for which the accused was arrested does not serve as a distinguishing factor. I have difficulty believing the majority means that evidence as to lineup identifications made during unnecessary delay is *admissible* if it relates to the crime for which the accused was arrested but *inadmissible* when it relates to other crimes. If that is not the intended result, I suggest that there is no valid basis in this case for relying upon the fact that the investigation dealt with *other* crimes.

It is clear that opinions of this court dealing with the *Mallory* rule did not apply it in the lineup situation. *See* Copeland v. United States, 120 U.S.App. D.C. 5, 343 F.2d 287 (1964); Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (1959). But I do not agree that these cases are inapplicable here because there is a "secondary detention." The reason our earlier holdings do not apply is that the Supreme Court's decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), has made the underlying rationale of those cases irrelevant. As my concurring opinion in Williams v. United States, 120 U.S.App. D.C. 244, 247, 345 F.2d 733, 736 (1965), indicated, the reason for not applying *Mallory* to a lineup identification was that a lineup in the absence of counsel before *Wade* was a perfectly legitimate procedure, *see* Copeland v. United States, *supra,* and that *Mallory* was concerned with improper "interrogation." It was natural for the cases following *Mallory* to concentrate on the exclusion of utterances, but not other forms of evidence. But *Wade* has changed this. Now that the right to counsel is an integral part of the lineup procedure, the warnings that are given at presentment and the opportunity to have counsel appointed are highly relevant to the lineup situation. *See* FED.R.CRIM.P. 5(b); 18 U.S.

C. § 3006A(b) (1964). Since the *Mallory* rule was a response to the protections afforded by prompt presentment, it is appropriately applied to the line-up situation in the wake of *Wade*.

To introduce the concept of a "divisible arrest" seems to me to divert us from the heart of the matter and I submit it has led the majority to rely on the absence of "probable cause" for this fictional "arrest" concerning the other crimes. Apparently by this the majority means that there is no probable cause for an arrest for these other crimes. At the same time the majority agrees that "police have, of course, a legitimate interest in seeking to explore the possible relationships between persons apprehended * * * and other crimes * * *." But compliance with Rule 5(a) as to the initial custody will not supply the "probable cause" concerning *other* crimes. The mere fact of presentment does not assure that a finding as to probable cause will be made at once, even as to the initial arrest, since continuances frequently occur. *Compare* FED.R.CRIM.P. 5(b), *with* FED.R.CRIM.P. 5(c).

The Supreme Court in *Mallory* was concerned not with the "probable cause" finding when dealing with delays in presentment, but with the judicial warnings of the presentment. These same warnings are relevant to the lineup situation in the present case. Once judicial warnings are given, I think there can be no doubt that the "legitimate interest" which the majority acknowledges the police have would warrant a magistrate in permitting the arrested person to be placed in lineups, subject of course to *Wade* requirements.

As I read the majority opinion, once there is a timely presentment, then Rule 5(a) has been satisfied and continued detention may result. This is correct, of course. The matter of placing one in a lineup when he is already in detention—whether temporarily under arrest or confined under a long sentence in a prison—is not the same as arresting a suspect off the street or from his home. The former is not being deprived of his

liberty when placed in a lineup and the holdings in *Wade* and Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), assure that such a prisoner will have proper warnings and counsel if he desires counsel. The reason for requiring probable cause for an arrest is to protect against arbitrary interference with liberty. When the condition of custody already exists, however, the constitutional requirement of an arrest on probable cause would be totally superfluous—a sheer ritual serving no legitimate protective function.