UNITED STATES of America

v.

Willie Lewis ALLEN, Appellant.

Nos. 22662, 22663.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 23, 1969.

Decided Jan. 30, 1969.

Mr. Stuart S. Greenfeig, Washington, D. C., was on the motion for appellant.

Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the opposition to the motion.

Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.

ORDER

PER CURIAM.

This cause came on for consideration on appellant's motion for summary reversal and the Court heard argument of counsel. Upon consideration thereof, it is

ORDERED by the Court that appellant's aforesaid motion be denied for the reasons stated in the attached opinion, and it is

FURTHER ORDERED by the Court that the stay granted by this Court's order of January 21, 1969 is hereby dissolved.

PER CURIAM:

Appellant was arrested on December 23, 1968, and charged with the robbery of a record shop. The next day he was presented to a judge of the Court of General Sessions sitting as a committing magistrate. At that time, an Assistant United States Attorney asked the judge to sign a form order [1] requiring appellant to appear for a lineup at a future date to be viewed by "witnesses in the above-entitled case * * * in addition to other complainants [the Government] may produce." The judge, in the presence of counsel representing appellant, inquired whether the circumstances of the other offenses were similar to the offense for which appellant had been arrested, and upon being assured that the *modus operandi* of the other crimes (also robberies) was similar, entered the order. Appellant then sought review of that part of the order which allowed him to be viewed by witnesses to "open crimes" [2] by filing a motion in the nature of mandamus in the District Court. When relief was denied, this appeal was taken, and motions for stay and summary reversal were filed. We stayed the lineup so that we might consider the motion for summary reversal.

I

A party seeking summary reversal by motion has the heavy burden of demonstrating both that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expedited action. That burden has not been carried in this case as to either remedy or merits, and accordingly the motion for summary reversal must be denied. Upon consideration of the harm to the parties in the absence of a stay and the likelihood of success on appeal, the stay is dissolved.

Our action rests in part on the fact that relief is sought by way of the extraordinary writ of mandamus. The Supreme Court has held that the use of this writ to obtain interlocutory review in criminal cases is to be narrowly restricted, Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), and the facts of this case do not appear such as to constitute an exception. Appellant is not left remediless by our refusal to grant relief on a summary basis, for he may raise all issues relating to eyewitness identification, including those he seeks to raise now, by a motion to suppress.

Appellant has raised no issue concerning the validity of the order insofar as it requires him to appear for a lineup to be viewed by witnesses of the crime for which he was arrested. We note further that although the order itself does not identify the other crimes involved, the judge was careful to inquire whether they involved a similar *modus operandi* and made an explicit finding to that effect [3] before issuing the order. We thus read his order to authorize the presence only of witnesses to similar *modus operandi* crimes. If the authority provided by that order is exceeded, appellant is free to raise the issue later by a motion to suppress.

Appellant has argued that his exposure to witnesses of open crimes involves a danger of misidentification not warranted by the facts of the case. We agree with appellant that any lineup, no matter how fairly run, will have an element of suggestibility and a concomitant risk of false identification. A witness

1. This order purports to be based on language in Adams v. United States, 130 U.S.App.D.C. 203, 210, 399 F.2d 574, 578–579 (1968), and is known colloquially as an *Adams* order.

2. By "open crimes" we mean unsolved crimes other than the one for which appellant was arrested.

3. Before entering the order, the judge stated as follows:

Therefore the Court will make a finding as follows:

The Government has requested a lineup for two purposes: One, for the purpose of the instant offense; secondly, for the purpose of having the defendant in a lineup to be viewed by witnesses to other offenses involving a similar *modus operandi*.

asked to come to the stationhouse to view a lineup will quite reasonably assume that the police have reason to believe that one of the men in the lineup is guilty.[4] And this assumption exerts a subtle influence on the witness to pick out from the lineup the man who looks most like the offender. That danger, however, is diminished in this case by the limitation of witnesses to those of similar *modus operandi* crimes. Thus the inherent suggestibility of a lineup is outweighed in this case by reasonable suspicion that the appellant may indeed be responsible for the open crimes.

In the papers before us and at oral argument, questions were raised as to the conduct of the lineup to be held pursuant to the order of the District Court. These issues are not properly before us for decision because they do not go to the power to order a lineup, and are thus beyond the scope of mandamus.[5] Further, as we read the order, it authorized only a lineup conforming to the requirements of due process, either explicitly stated by the *Wade, Gilbert* and *Stovall* decisions [6] or implicit in the requirement of due process itself. If the lineup at which appellant appears departs from those standards, appellant may challenge it by a motion to suppress the identification as being unconstitutional.

## II

Without purporting to decide questions not now before us, we do wish to alert the Government to two problems concerning the conduct of this lineup which would warrant careful consideration.

First, we note that the presence of counsel at a lineup serves not only to allow an informed challenge to be made to identification evidence at trial, but also "to minimize the likelihood of an unduly suggestive confrontation." [7] It would seem that appellant's counsel might best be able to serve his client's interest and the interest of justice if he is given in advance of the lineup the names of the witnesses who would attend; the time, place and nature of the crimes involved; and the descriptions of the suspect, if any, which the witnesses had given to the police. Counsel also might be allowed to have a role in setting up the lineup and proposing changes to avoid suggestive features. If such a procedure were followed, it might well be that, absent plain error or circumstances unknown to counsel at the time of the lineup, no challenges to the physical staging of the lineup could successfully be raised beyond objections raised at the time of the lineup.

A second problem posed by the multi-witness lineup is the increased potential for inter-witness communication which is unfairly suggestive.[8] The Government thus might do well to consider methods of separating witnesses to prevent communication between witnesses or the identification of suspects by one witness in the presence of other witnesses.[9] The promulgation of carefully written and well-enforced regulations which instruct

---

4. *Cf.* United States v. Wade, 388 U.S. 218, 234–235, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

5. *See* Will v. United States, 389 U.S. 90, 98–99, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

6. United States v. Wade, *supra* Note 4; Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967) ; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

7. Clemons v. United States, 133 U.S.App. D.C. ——, 408 F.2d 1230, decided December 6, 1968 (*en banc*). *See* United States v. Wade, *supra* Note 4, 388 U.S. at 238.

8. *Cf.* Gilbert v. California, *supra* Note 6, 388 U.S. at 270 n. 2, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (the lineup was viewed by over 100 people; witnesses called out in each other's presence the numbers of the men they could identify).

9. Having small groups of witnesses view a series of lineups may avoid one problem at perhaps the expense of another, for requiring the accused to remain after he had been observed by the witnesses to the offense for which he was arrested raises the problem of detention without probable cause. *Cf.* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

both witnesses and the police as to appropriate conduct during the lineup would certainly be a helpful step in the right direction.[10]

Problems such as these are the sort which a creative prosecutor, alert to both the rights of the accused and the legitimate needs of effective law enforcement, will do well to consider carefully in this evolving, and as yet untested, area of the law.

10. *Cf.* United States v. Wade, *supra* Note 4, 388 U.S. at 239, 88 S.Ct. 1926, 18 L.Ed.2d 1149.