**Anthony F. LONG, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 22218.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 21, 1969.

Decided Dec. 18, 1969.

---

Bazelon, Chief Judge, dissented in part.

Mr. Francis C. Allen, Washington, D. C., with whom Mr. N. Meyer Baker, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Clarence A. Jacobson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and James A. Strazzella, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Mr. Roger E. Zuckerman, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

In this appeal from a conviction for robbery and assault with a deadly weapon, appellant contends that it was error to permit in-court identifications by the victim and his son, in view of a previous squad room identification that

took place in the absence of counsel. We agree that this confrontation reflected a violation of appellant's rights under Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), but affirm since there is an "independent source" for the identification by the victim, William Hayden, and in the context of the Government's case the identification by his son Jerry Hayden, is a matter properly governed by the rule precluding reversal for harmless error.

## I

These are the facts, as developed by the testimony of William and Jerry Hayden: On December 23, 1967, around 3:50 p. m., William Hayden was sitting in his delivery truck waiting for his son to return from a call at a nearby house. Two young men approached Mr. Hayden. Both were armed with pistols. One youth, identified at trial as appellant, thrust his gun at Mr. Hayden's head and threatened to blow his brains out. The assailants frisked Mr. Hayden and demanded his money, which he turned over to the boys, who then fled. Mr. Hayden testified that it was not yet dark, that neither robber wore a mask, and that he had a good opportunity to observe their faces, especially that of appellant whom he had looked at "most of the time the robbery was going on."

When the robbers fled, Mr. Hayden called to his son Jerry who observed a man fleeing down the alley away from his father's truck. Jerry Hayden gave chase, and lost the attacker when he entered a car and drove away. During the chase, however, the robber turned around. Jerry Hayden had a chance to look at the robber's face. At trial he identified appellant. Jerry Hayden also related that he was able to get the first

three numbers of the license plate and identify the year and model of the get-away car.[1] It was stipulated that appellant's mother, Mrs. Roberta Long, was the owner of a car of the same year and model, with a license tag bearing the same first three numbers as that spotted by Hayden on the get-away vehicle.

## II

Turning to the circumstances of the pre-trial encounter which, it is contended, renders inadmissible the in-court identification, the pre-trial hearing reveals the following. Detective Hannon of the Robbery squad, who was handling the complaint, contacted both Haydens and the appellant's mother, Mrs. Long, and asked them if they could come to the Robbery Squad Headquarters at 3:00 p. m. on January 13, 1968. Detective Hannon requested that Mrs. Long bring her son, appellant, with her. Detective Hannon's purpose in arranging this meeting was to have the appellant "wait in the outer office" (apparently of the Robbery Squad room) and "to try to have an impromptu line-up to eliminate him as a suspect." Detective Hannon testified that he had informed Mrs. Long by telephone that he was asking the complainant to come to the robbery squad headquarters and that "she had a right to bring a lawyer with her."

Jerry Hayden arrived first and was conducted to the robbery squad room where he was seated at a table at the far end and asked to leaf through a book of mug shots.[2] William Hayden arrived some minutes thereafter, about 3:10 or 3:15 p. m. Detective Hannon took Mr. Hayden to the table where Jerry Hayden was looking at pictures. Almost immediately thereafter appellant arrived in the squad room, with his mother and stepfather, and was joined by Detective

---

1. The Haydens engaged in some independent sleuthing the day after the robbery and drove around the hold-up vicinity looking for a car that matched the description of the get-away vehicle and bore a license tag with the same first three numbers noted by Jerry Hayden. The Haydens found such a car and this was eventually traced to Mrs. Long.

2. The testimony does not reveal whether the mug book contained a photograph of appellant. It is clear that no photographic identification was made prior to the identification of appellant in the robbery squad room.

Hannon. Jerry Hayden happened to look up from the mug book and saw appellant at the front of the room, about 45–50 feet away. He said, "There is the man that robbed you." William Hayden looked up and said, "Yes, that's the man." One of the detectives standing by the table asked Jerry Hayden if he had spotted the robber's photo in the book. Jerry Hayden pointed to appellant across the room, and identified him as the robber. Appellant was then placed under arrest and advised of his rights, and his lawyer was contacted. William Hayden testified at the pre-trial hearing that he had observed appellant in the station house lobby, recognized him immediately and he rode up in the elevator with appellant.[3] He did not tell anyone at the time of having seen appellant. Detective Hannon said he "rushed" William Hayden to the back of the room as soon as he arrived.

### III

The squad room confrontation between the Haydens and the appellant took place after the decision of the Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Wade established that the identification line-up is a critical stage of the prosecution requiring the presence of accused's counsel in order to insure a fair trial. The decision represented an effort to implement the constitutional protection established by Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), which held that an identification confrontation may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to constitute a denial of due process of law. The Court recognized the difficulty of determining at the date

of trial, with any reasonable degree of certainty, whether the identification confrontation had in face been suggestive. By affording the right to counsel at an identification confrontation, the Wade decision provided a means whereby improperly suggestive procedures could be called to the attention of the police for preventive correction, and if necessary, to the attention of the court for a ruling on suggestiveness. Thus, although the presence of counsel does not preclude a later challenge for suggestiveness, the fulfillment of this right to counsel or its intelligent waiver is after Wade a pre-condition to the legality of an identification confrontation. It is appropriate, then, that we treat the right to counsel as a threshold question and not reach the issue of suggestiveness unless we find that appellant was not deprived of that right.

Although Wade arose in the context of a formal post-indictment line-up, we find its requirement of counsel equally applicable to the informal, pre-arrest confrontation of appellant which took place in the squad room. The Supreme Court expressly held its ruling applicable to the informal "show-up" in which witnesses are confronted by a single suspect. Indeed, the more informal the confrontation procedure the greater is the danger of suggestiveness, and the greater the difficulty of ascertaining at trial the facts of the "confrontation." In Mason v. United States, 134 U.S.App.D.C. 280, 414 F.2d 1176 (June 30, 1969), it was held that no exception from the Wade requirement was established by the fact that a pre-indictment eyewitness confrontation occurred at a preliminary hearing in the General Sessions Courtroom. There would be even less basis for an exemption

---

3. Mr. Hayden testified as follows: "I walked in the lobby at 300 Indiana Avenue and the man that robbed me was standing waiting for the elevator, so I stepped back and turned my back until the elevator got there. Then when the elevator came, I turned my back again and got on, and then walked to the Robbery Squad Office. The detective took me with a book of photos and carried me with a book of photos to the back of the room where I was sitting with my son at the time. As I was sitting there looking around, my boy happened to look over, and he said, 'There is the man that robbed you.' He had the fellow Long, the fellow there, talking to him at the front of the room."

from *Wade* for an identification occurring in a police squad room. The sources of suggestiveness in an eyewitness identification are subtle, and the suspect is less likely to be alert to the need for safeguards when no formal process has issued against him. No such alert was provided here either by the bare request that the defendant appear at the squad room in connection with a robbery complaint, or by the advice that the complainant would also be present and that there was a right to come with counsel.

Our conclusion that the appellant was entitled to counsel or substitute counsel at the squad room does not mean in any way that we suppose or assume that the police were purposefully attempting to circumvent the requirements of *Wade*.[4] It may be that Detective Hannon refrained from arrest prior to confrontation because he doubted the existence of probable cause against appellant. It may also be that Detective Hannon's relatively informal approach reflected his wish to proceed in a way that would permit establishing an identification yet would also be fair to appellant in the event he were not directly involved. Either of these objectives would have been proper, yet neither justified the use of an approach that failed to safeguard the right to counsel at any confrontation arranged by the police.

## IV

■ Because we hold that the *Wade* right to counsel was available to appellant at the time of the squad room identification, we must ask whether the absence of counsel at that identification is justified by an intelligent waiver. Although appellant's mother was informed

that she had a right to bring counsel to the police station, appellant was never informed of this right.[5] Nor were either appellant or his mother told that a lawyer would be provided if they could not afford their own. When appellant appeared at the squad room without counsel, he was not informed that substitute counsel could be arranged.[6] Though we need not decide whether any one of these infirmities alone would preclude an effective waiver, in the aggregate they compel the conclusion that appellant was never adequately informed of his right and hence there was no effective waiver of the right to counsel.

## V

■ *Wade* gives to the Government "the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the line up identification." 388 U.S. at 240, 87 S.Ct. at 1939. We believe that this test is satisfied if it is shown that prior to the tainted confrontation the witness was capable of making a spontaneous identification of the suspect based upon his observations at the time of the offense. At the time of the holdup, William Hayden had a good opportunity to observe the robber at close quarters and in daylight. At trial the court responded to defense counsel's objection to the squad room identification by referring to the circumstances surrounding Mr. Hayden's identification of the appellant in the lobby and elevator of the Municipal Building.

He [Mr. Hayden] comes into the Municipal Center which has hundreds of people in it, and in the elevator on

4. "We do not assume that these risks are the result of police procedures intentionally designed to prejudice an accused. Rather we assume they derive from the dangers inherent in eyewitness identification and the suggestibility inherent in the context of the pretrial identification." United States v. Wade, 388 U.S. 218, 235, 87 S.Ct. 1926, 1936, 18 L.Ed. 2d 1149 (1967).

5. Cf. Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 375, 236 F.2d 666,

670 n. 26, 60 A.L.R.2d 686 (1956); Williams v. Huff, 79 U.S.App.D.C. 31, 142 F.2d 91 (1944); Note, Waiver in the Juvenile Court, 68 Colum.L.Rev. 1149 (1968).

6. In *Wade* the Court wrote: " * * * we leave open the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay." 388 U.S. at 237, 87 S. Ct. at 1938.

the first floor he sees this defendant under circumstances that are in no wise suggestive or prejudicial, so that surely Mr. Hayden's identification is admissible.

Tr. 52–53. Although the trial judge did not use the language of *Wade* in haec verba, he was obviously of the view that he need not consider the propriety of the robbery squad room identification because an independent source for Mr. Hayden's in-court identification was established by the prior spontaneous non-tainted identification. Under these circumstances, his finding suffices to satisfy the requirement of *Wade* concerning independent source. This finding represents an appraisal of Mr. Hayden's credibility, an appraisal which we are unable to disturb. While it is surprising that Mr. Hayden failed to tell the detective that he had seen the robber in the lobby, there is testimony that he was "rushed" to the back of the robbery squad room to join his son who was looking through a mug book. Whether he is to be believed under these circumstances is a question we cannot withdraw from the province of the trial judge who observed his demeanor.

■ As to the son, Jerry, there is no such "independent source." [7] This is not a case where an independent source may be ascribed to extraneous circumstances, such as prior acquaintance, or to the witness' prolonged opportunity to observe a suspect, or to the fact that the observation was made under ideal conditions, etc. Jerry Hayden's only other encounter with appellant was on the day of the crime, when he observed the robber during a chase and never closer than twenty feet.

## VI

While we think it was error to permit Jerry Hayden to identify appellant at trial, it is not reversible error unless it infected the trial. "Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact \* \* \* on the minds of an average jury." Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). [8]

■ Turning to the record before us, we think the Government's case rested on a substantial foundation and that Jerry Hayden's identification testimony was essentially cumulative. Both direct and circumstantial evidence connected appellant to this robbery. Mr. William Hayden testified positively and was unshaken on cross-examination. His identification was based on an observation that was brief but at close quarters and under good conditions. His testimony was by no means undercut, it may even have been fortified by the testimony of appellant's mother concerning appellant's clothing on the day of the robbery, since

7. The ruling of the trial judge that the circumstances of the robbery squad room identification were not impermissibly suggestive is different from tracing the in-court identification to any other "independent source." And in our view the trial judge erred in holding *Wade* inapplicable to the squad room identification because of lack of custody.

8. The Court applied the principle of Chapman v. California, 386 U.S. 18, 19, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967) as calling for the affirmance of a conviction where the evidence was so overwhelming as to lead to the conclusion that the admission of the confession of a co-defendant, though erroneous in view of the denial of the appellant's constitutional right to be confronted with and to cross-examine adverse witnesses, was harmless beyond a reasonable doubt. In applying this harmless error standard the Court rejected the argument "that we must reverse if we can imagine a single juror whose mind might have been made up because of [codefendants'] confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury." (395 U.S. at 254, 89 S.Ct. at 1728) The dissenting opinion stated that the Court departed from what it had taken as the holding of Chapman, and compromised the principle that a conviction cannot constitutionally be based to any extent on constitutional error.

Mrs. Long's testimony in part agreed with Mr. Hayden's description.[9] This strong testimony identifying the defendant's person was buttressed by the testimony identifying the get-away car, and the fact that it proved to belong to appellant's mother. We take into account the fact that the law is in a state of flux and the police have been forced to act without any guidelines. This militates against an unduly stringent application of the harmless error test. *Cf.* Davis v. United States, 133 U.S.App. D.C. 167, 409 F.2d 453 (1969); United States v. Fioravanti, 412 F.2d 407 (3rd Cir., June 16, 1969). The strands of doctrine involved in identification cases are affected by the judgment, aye or nay, of a probability of misidentification. We think the possibility of such injustice to be remote as to appellant.

Affirmed.

BAZELON, Chief Judge (concurring in part and dissenting in part):

I agree with the majority that appellant did not waive the protections he should have been afforded under *Wade*. I have concluded, however, that on this record the in-court identifications by the Haydens should have been excluded and would therefore remand the case for a new trial.

As the court's opinion recites the facts concerning the crime, I turn directly to the stationhouse confrontations. Part V of the opinion declares that the "independent source" rule of *Wade* was satisfied in this case. While conceding that "the trial judge did not use the language of *Wade* in haec verba," my brothers believe that the judge found an "independent source for Mr. Hayden's in-court identification * * * [in] the prior spontaneous non-tainted identification" at the elevator.[1] If I were satisfied that such a finding had been made, I could understand their refusal to disturb it. However, such a finding was not only lacking here *in aut haec aut alia verba* of *Wade*, but the facts do not provide a basis for this Court to construct such a finding.

After reviewing the suggestiveness of the elevator confrontation, the trial judge simply declared that "it is perfectly clear that the identification by Mr. Hayden was of such a nature as not to be suggestive in any way, shape or form." If for the moment we suppose that there *was* an elevator identification, the trial judge's statement does not amount to a finding that the identification provides an "independent source" for believing that Mr. Hayden could identify Long in the absence of any suggestion implanted during the squadroom proceedings. Rather, the trial court's statement has the opposite import, *i. e.*, that there was nothing about the elevator confrontation (such as a policeman constraining Long, etc.) that would have tainted the squadroom identifications. If we are going to defer to the trial judge's findings because he is in a superior position to evaluate the witnesses' credibility, we must at least have such findings so we can be sure that Mr. Hayden's in-court identification was based solely on his recollection of the twenty second long hold-up and not on the image implanted in his mind by the quarter-hour unconstitutional confrontation in the Robbery Squad office.

The actual sequence of events makes clear that our proper concern is not the elevator confrontation's possible tainting of the squadroom identification but vice versa. Mr. Hayden did not make a "prior spontaneous non-tainted identification" of appellant at the elevator. His "identification" came *subsequent* to the one-man show-up in the squadroom, of which the majority disapproves; it was anything but *spontaneous*; and it

---

9. Mr. Hayden described appellant as wearing a black leather jacket, dark brown trousers and a cap. Mrs. Long testified that on the day of the robbery her son wore black shoes, a black sweater and black leather jacket, but that he did not then or ever wear a cap or hat.

1. Majority opinion, *supra* at 804.

was very probably *tainted* by the squad-room proceedings, although the trial judge did not rule on this possibility, since he approved what took place in the squadroom.[2]

Moreover, it strains my sense of reality to say that any elevator "identification" took place. According to his testimony, Mr. Hayden entered the Municipal Building and found himself standing fifteen feet from a man whom he now says had three weeks previously held a gun to his head and threatened to blow his brains out. He then proceeded to enter the elevator with this man. When he got off the elevator, he was met by the police officer in charge of investigating the case. As far as he knew, the police were still seeking the man who robbed him, yet he did not mention to this officer that he had just seen the robber. Instead he walked to the back of the squadroom where the books of suspects' pictures were located, and rather than telling either of the detectives there or his own son that he had seen the robber, he settled down to look at pictures.[3] While they were looking through the book, his son glanced up and identified Long as the man who robbed the truck; Mr. Hayden then chimed in with his son. Some ten minutes later, Long was brought back alone for a closer examination by Mr. Hayden and his son, who again identified him. At this point,

Mr. Hayden informed the police that he had first seen the appellant that afternoon when he entered the Municipal Building.[4] I cannot believe that statements which Mr. Hayden made as afterthoughts following the Robbery Squad office identifications constitute an identification shown by "clear and convincing evidence" to provide an "independent source" for the in-court identification.

---

2. The majority disagrees with the trial judge's *Wade* conclusions, but stops there. I cannot agree with this unspoken endorsement of the trial court's conclusion that no taint of suggestiveness attended these confrontations. Particularly as to the squadroom identification, I think one must blink reality to find that an 18 year-old black suspect melts inconspicuously into a room populated with police detectives. The Supreme Court did not arbitrarily establish an exclusionary rule in *Wade*. Rather, the realities of cases such as this one led it to fashion a means of protecting suspects from the suggestive influences inherent in identification proceedings. *See, e. g.,* "potential for substantial prejudice to the accused," 388 U.S. at 232, 87 S.Ct. at 1935, "a process attended with hazards of serious unfairness to the criminal accused," *id.* at 234,

87 S.Ct. at 1936, and "dangers inherent in eyewitness identifications and the suggestability inherent in the context of pretrial identification," *id.* at 235, 87 S.Ct. at 1936.

3. The majority places great emphasis on Mr. Hayden's being "rushed" to the back of the squadroom, a description given not by Mr. Hayden of the way he felt but by the officer who accompanied him. There is no testimony, however, which would suggest that once he was at the table with the photograph books there was any pressure on Mr. Hayden which prevented him from telling about the elevator "identification."

4. Appellant testified at trial that Mr. Hayden was not in the elevator which appellant rode up to the Robbery Squad office.