**UNITED STATES of America**

v.

**Ronald S. GREENE, Appellant.**

**No. 22923.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1970.

Decided April 29, 1970.

Mr. Charles A. Dukes, Jr., Hyattsville, Md. (appointed by this court), for appellant.

Mr. John Ellsworth Stein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, McGOWAN and ROBB, Circuit Judges.

McGOWAN, Circuit Judge:

This appeal from a jury conviction of robbery and assault with a dangerous weapon (22 D.C.Code §§ 2901, 502) presents only issues deriving from a pretrial identification of appellant by one of the victims. We find that, by reference to earlier rulings of this court, the introduction of evidence of this identification by the Government as part of its direct case necessitates reversal.

I

The robbery was of a dry cleaning shop on December 1, 1967. One of the employees, Harper, was the key witness against appellant, making both an in-court identification of appellant as well as relating to the jury on direct examination the circumstances of the pretrial identification which he had made of appellant. There was, however, a prior motion to suppress this evidence, which was the subject of an evidentiary hearing out of the presence of the jury. At that hearing, Harper testified that he had been confronted in the shop by appellant armed with a gun, and forced to go into a back room and lie on the floor with two other employees, Mrs. Jackson and Mrs. Prioleau. A few days later, Harper was shown books of photographs by Sergeant Wesley of the Metropolitan Police. Harper's testimony was that he picked out a picture of appellant which he thought to be that of the robber but couldn't be sure; he expressed a wish to see the subject of the photograph in the flesh.[1]

Sergeant Wesley testified that he showed the photographs to all three of the employees; that Harper "liked" the photograph of appellant but couldn't be sure; and that the two women said that "the picture had resemblance to the taller of the two that held them up." A few days later, Wesley issued what he characterized as "summonses" to Harper and appellant. This document notified each addressee to appear at the United States Attorney's Office in the General Sessions Courthouse at 9:00 A.M. on Saturday, December 16. The form used for this purpose is set forth in the margin.[2] Wesley said that he used this approach

---

1. Harper's actual testimony on this score was as follows:

> Yes, I picked the man out—by this picture that I picked out, I was almost positive. I couldn't say for sure. Like I told Mr. Wesley, "I would like to see this person." By his picture, it looked like the person who held the gun on me.

In the course of this hearing, the prosecution represented that it did not intend to adduce any evidence before the jury of the viewing of the photographs by Harper; and that intention was adhered to.

2.

IN THE DISTRICT OF COLUMBIA
COURT OF GENERAL
SESSIONS BRANCH
of the
UNITED STATES ATTORNEY'S
OFFICE 1st FLOOR, 5th &
E STS., N.W.

To _____

You are hereby notified to appear as indicated below:

☐ In the United States Attorney's Office, Room 116, on the First Floor of the District of Columbia Court of General

as the "next step" in his investigation and because he did not believe that he had probable cause to arrest appellant.

Harper testified that he responded to the "summons," without knowing precisely what its purpose was. Upon entering the room to which he was notified to go, he said he saw some 10 or 12 men standing around, and immediately recognized appellant in a group with about three other men. He immediately went over to the desk and told the officer seated there that "the man who held me up is here in this room." Wesley was not present, and Harper was told to wait until he arrived. When he did, Harper told him that appellant was the robber. Appellant was thereupon placed under arrest.

Appellant testified that he also responded to the summons. He said that he told the officer at the desk that he had a notice to report but that he did not know of any charge against him. He went out of the room and into the hall several times while waiting for Wesley to come, and his testimony was that Harper was in the room when appellant first arrived.[3]

At the conclusion of the suppression testimony, the court heard oral argument and thereafter ruled against suppression. The colloquy of court and counsel for both sides, reported in the transcript, is not a model of clarity in terms of identifying and speaking to the true issues. For present purposes, however, it is enough to note that a Sixth Amendment issue of appellant's right to counsel at the confrontation arranged by means of the "summons" was unmistakably raised

and unmistakably rejected by the trial court.

Appellant presented an alibi defense to the jury. The two store employees, Mrs. Prioleau and Mrs. Jackson, each testified that appellant was not the man they had seen at the time of the robbery.

## II

█ The parties devoted much of their time in brief and argument before us to the question of whether appellant was, in legal contemplation, under arrest when he presented himself at the U. S. Attorney's Office in response to the "summons." However, since our decision in Long v. United States, 137 U.S. App.D.C. 311, 424 F.2d 799 (1969), it is clear that the Sixth Amendment right to counsel at a pretrial confrontation for purposes of identification does not turn automatically upon the existence *vel non* of legal arrest. *See also* Mason v. United States, 134 U.S.App.D.C. 280, 414 F.2d 1176 (1969). In *Mason* the pretrial confrontation in issue took place after arrest but prior to indictment. It, therefore, nullified any thought that, because *Wade* involved a defendant in custody after indictment, the right to counsel for pretrial identification purposes attaches only after indictment. On the instant appeal, the Government's position is that the right does not come into being prior to arrest. *Long*, building upon *Mason*, negates that proposition. This does not, of course, mean that no identification confrontation without counsel can ever be valid following arrest. *See* Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

---

Sessions Building at 5th and E Sts., N. W.;

□ In witness room 310 of the Assignment Branch of the District of Columbia Court of General Sessions at said address: at _____ o'clock (a. m.) (p. m.) on the _____ day of _____, 19___, as a witness for _____ and do not depart without leave. _____

　　UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA

3. The only other witness at the suppression hearing was Mrs. Prioleau. She testified that she was shown the book of photographs and was asked whether she recognized the subject of one photograph in particular. She said that she could not.

■ As in *Long,* the pretrial confrontation between Harper and appellant took place after the Supreme Court's *Wade-Gilbert-Stovall* trilogy.[4] The *Wade* right to counsel, thus, is a threshold question to that of the fairness of the confrontation weighed in the due process scale of the Fifth Amendment; and, as we said in *Long,* "we find its requirement of counsel equally applicable to the informal, *pre-arrest* confrontation of appellant in the squad room." (Emphasis supplied). We characterized in *Long* the Supreme Court's rationale in *Wade* to be that of the difficulty attendant upon accurately reconstructing the exact circumstances of the pretrial confrontation, and the useful role which counsel can play not only in that process but in suggesting procedures which might render the confrontation legally unassailable thereafter.

*Long* involved a verbal request by the police to the victims and the suspect to come down to the police station at the same time. We see no ponderable distinction between that and the written "summons" used here to get the victim and suspect together at the U. S. Attorney's Office.[5] The vice in both is that a confrontation for identification purposes is their object, but no provision is made for the Sixth Amendment protection of right to counsel, held in *Wade* to be so critical to the fair and efficient administration of justice in these situations.

Due respect for our ruling in *Long,* therefore, requires that we find the District Court's suppression ruling here to be in error. And, since the Government introduced evidence of the identification made at the uncounselled confrontation as part of its direct case, the deterrent rule of the Supreme Court in the identification cases commands reversal for a new trial. *See* Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1234 (*en banc*), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). Since the Government's case against appellant rested solely on Harper's identification, and especially since the other two eyewitnesses to the holdup testified that appellant was not the man, we see no possible room here for operation of the *Chapman-Harrington* [6] escape valve, which the Government, quite properly, we think, has not suggested to us as warranting affirmance here.

We are not insensitive to the dilemma in which Sergeant Wesley was placed when Harper, after tentatively identifying appellant from the photographs, expressed the wish to see him in person. Responsible police action would hardly encompass dropping the matter at that point simply because, as Wesley believed, there was no probable cause to arrest. Any rational view of the proper scope of police investigation would surely assume that the time had come, in fairness to both the public and the suspect, to give Harper a chance to see if appellant was

4. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) ; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) ; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967).

5. The "summons" on its face, Note 2 *supra,* appears to be an instrument designed to bring in, either for interview or the actual giving of testimony in court, witnesses for both the prosecution and the defense. It nowhere suggests that a purpose embraced by it is to confront a criminal suspect with the victim for identification purposes. Compare the so-called *Adams* order under which an arrestee, at the time of presentment before the magistrate, is directed to appear at Police Headquarters

to appear in a formal lineup for viewing by the eyewitnesses of the crime for which he was arrested and of other crimes involving a similar *modus operandi.* *See* Adams v. United States, 130 U.S.App. D.C. 203, 399 F.2d 574, 578–579 (1968) ; United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969) ; Spriggs v. Wilson, 136 U.S.App.D.C. 177, 419 F.2d 759 (1969). As we stated in *Allen,* the *Adams* order assumes the availability to its addressee of the rights contemplated by *Wade-Gilbert-Stovall.*

6. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) ; Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

in fact the man who had robbed him. In *Wade-Gilbert-Stovall*, however, the Supreme Court has strongly intimated that such an opportunity should ordinarily be by means of a formal lineup. Formal lineup facilities are ordinarily available only at police headquarters. So long as the law was taken to be that no deprivation of personal liberty could occur without probable cause to arrest, the problem was one of how to compel a suspect to present himself for a lineup viewing.[7]

Sergeant Wesley's solution of the problem in this instance is not an acceptable one. But, as we said of one of his police colleagues in *Long*, we do not assume any wilful purpose on his part to circumvent *Wade*. What he needs is, as we said in *Adams*, some creative legal thinking on the subject of how a policeman should proceed under these circumstances. This need, which was plainly evident on the day *Wade-Gilbert-Stovall* were decided nearly three years ago, has been a long time in receiving the attention it merits.[8] The thorny nature of the problem is obvious, but that is surely no reason for failing to bring the best thought to bear upon it in the interest of seeing whether the competing interests can be fairly reconciled.

Reversed.

ROBB, Circuit Judge (concurring):

I see nothing unfair or suggestive in the admitted circumstances of Harper's spontaneous recognition of the appellant as the man who robbed him; nor do I understand how the presence of counsel could have improved the situation for the appellant. Nevertheless, Long v. United States, 137 U.S.App.D.C. 311, 424 F.2d 799 (1969), requires me to concur in the reversal of the appellant's conviction.

7. Approximately one year after *Wade*, the Supreme Court for the first time held that probable cause to arrest is not an indispensable condition to every conceivable police restraint of personal liberty. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). After that, the Court, in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), threw out the idea that a suspect perhaps could, under judicial supervision, be compelled to submit himself to fingerprint examinations. The imaginative utilization of judicial authority in these difficult areas, as distinguished from police improvisation, is, of course, precisely the point we made in *Adams*, Note 5, *supra*.

8. On March 9, 1970, the Department of Justice announced that it was asking Congress for legislation to require federal criminal suspects to submit, under judicial compulsion, to a variety of investigatory procedures, including formal lineups for identification. The Department's proposal appears to be very similar to S. 2997 91st Congress, 1st Sess.), which was introduced on October 7, 1969, by Senator McClellan.