UNITED STATES of America

v.

Thomas A. WILLIAMS, Appellant.

UNITED STATES of America

v.

William H. BETHEL, Appellant.

Nos. 22380, 22381.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 3, 1969.

Decided Jan. 14, 1970.

Mr. Dickson R. Loos, Washington, D. C. (appointed by this court) for appellants.

Mr. James L. Lyons, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and James R. Phelps, Asst. U. S. Attys., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

 These appeals from a jury conviction of robbery and assault with a dangerous weapon present only two claims for reversal. The first is that the in-court identification made by the victim at trial was fatally tainted by a pretrial photographic identification. *See* Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This issue was, however, made the sub-

ject of a preliminary evidentiary hearing before the jury was summoned, at the conclusion of which the trial court found that there was no due process violation. Our examination of the record provides no basis for rejecting that finding. The testimony was that the victim on the day of the robbery was shown a number of photographs but recognized no one. A few days later she went to police headquarters to look at more photographs. She examined several bound volumes of photographs without result. She was then given at least six loose photographs, and immediately selected those of appellants. Her attention was not focused by the police on these two photographs by words or action.[1] The testimony also was that her opportunity to observe appellants at the time of the crime was excellent.[2]

■ The second error allegedly requiring reversal relates to the trial court's handling of an inquiry received from the jury in the course of its deliberations. The communication was in the form of a note from the foreman asking this question: "How was identification made before arrest?" After consulting with both prosecution and defense counsel, the court, with the consent and approval of each, responded as follows: "You must decide this case on the basis of the evidence as you recall it and no additional information not in the record can be given you." It is now argued for the first time on appeal that the court should, even though not requested to do so, have informed the jury that it could infer from the absence of any evidence about pre-arrest identification that such evidence would have been adverse to the Government.

We are far from finding in these circumstances any plain error necessitating reversal. Rule 52(b), Fed.R.Crim.P. The defense was fully aware of the photographic identification, and was entitled to bring it to the jury's attention. It chose not to do so—an omission emphatically at odds with its present assumption that the evidence would have been damaging to the prosecution's prospects. The prosecution, on the other hand, was by no means free at that time from the possibility of a successful hearsay objection to any effort on its part to support its in-court identification by evidence of a prior photographic identification. This issue was not definitively laid to rest in favor of admissibility until our subsequent decision in *Clemons*, note 2 *supra*.

In reaching that result in *Clemons*, we referred to our belief "that juries in criminal cases, before being called upon to decide the awesome question of guilt or innocence, are entitled to know more of the circumstances which culminate in a courtroom identification—an event which, standing alone, often means very little to a conscientious and intelligent

1. In addition to her in-court identifications, the victim testified at the trial that she had made a similar identification of appellants when she testified at the preliminary hearing held by the committing magistrate. Appellant now urges that the transcript of that hearing shows that the victim testified contrarily to what she said at the suppression hearing, indicating that she had been handed only two loose photographs of appellants. We think that the first testimony is susceptible of the construction that she was intending to say that there were only two photographs that she identified. In any event, her testimony was quite explicit at the suppression hearing that she picked the two photographs out of at least six others, and those six were produced and examined by the District Court.

2. As the Government says in its brief, it is "somewhat unclear" as to whether the trial judge expressly ruled that there was an independent source for the in-court identification. That issue need not be reached in view of our disposition of the challenge to his finding of no violation. We note that this trial occurred several months before our decision in Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1237, cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), where we suggested that "it would appear in the interest of expeditious judicial administration" for a ruling to be made on independent source even though no violation be found.

juror * * *." This is not the only record we have seen in recent months in which a jury has sought more information about pre-trial identification. Presumably the problem has been mitigated in post-*Clemons* trials by our ruling in that case. The fact remains that jurors are highly conscious of, and rationally very curious about, the gaps in their formation with respect to what has preceded the courtroom formalities they are presently observing. Another way to remedy this deficiency is for the prosecution to seek prompt post-arrest formal lineups of the kind contemplated by the Supreme Court in the *Wade-Gilbert-Stovall* trilogy. Evidence produced by the Government of such an identification would go far towards assuaging the jurors' obvious feeling that convicting on the basis solely of the routine in-court identification partakes too much of an act of faith rather than of informed reason.[3]

Affirmed.

3. One appellant here appears to have remained in custody after his arrest and presentment, and was presumably available for viewing in a formal lineup. The other appears to have been presented on the day of his arrest and to have been released from custody by the magistrate pending indictment. Even in this latter instance, however, the device of the so-called "Adams order" would provide a means of securing his availability for a formal lineup. *See* Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968), and United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969).