**UNITED STATES of America**

v.

**Thomas KIRBY, Appellant.**

**No. 23106.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1970.

Decided April 24, 1970.

Mr. Francis X. Grossi, Jr., Washington, D. C., with whom Mr. A. Duncan Whitaker, Washington, D. C. (both appointed by this Court), was on the brief, for appellant.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.

LEVENTHAL, Circuit Judge.

This case concerns the validity of the procedures which led to the identification of defendant as the person who committed the acts that led to his conviction on charges of robbery, and assault with a deadly weapon, and to his concurrent sentences. On his appeal, we affirm.

### I *Factual Background*

The identification was made by Vera May Lockett, who was working alone in the office of a real estate corporation at 11:40 a. m. on September 20, 1968, typing up a lease, when two men walked in. She watched them, but they said nothing for about 10 minutes. Then one of them (whom she later identified as defendant) pointed a pistol at her, and said, "This is a stickup." She looked directly into his eyes. She was then made to lie on the floor, where she watched him search the desk drawers, where she told them the money was kept. The robbers took money, including checks, from various drawers and from the safe, and escaped. When the uniformed police arrived Mrs. Lockett gave them descriptions of the robbers. She gave more detailed descriptions shortly afterward to the detective from the robbery squad. He testified that she described defendant as a Negro male, 5 feet 10 inches tall, weighing approximately 140 pounds, with a dark complexion, clean shaven with close cut hair, in his early 20's, and wearing a yellow shirt. As to defendant she

particularly noted that he had a receding hairline and pointed, sharp features.[1]

## II *Identification of Photographs*

Three days after the robbery, Mrs. Lockett came down to the Robbery Squad and examined a number of books of photographs, an estimated thousand photos, but made no identification from these. A week after the robbery the detective learned that police in a nearby community had in custody a Robert Wilson, who had on him certain checks taken in the robbery. Wilson was too old to match the identification, but the detective learned from him that one of his sons, Thomas Kirby, was of an age matching Mrs. Lockett's description. On October 1, 1968, the detective came to Mrs. Lockett's office and showed her seven police photos, including one of defendant. She identified defendant's photo as that of the robber. After she made the identification, the detective told her that checks had been found on Wilson, and he would be getting "a warrant for this subject."

Defendant contends this photographic identification was improper because it was made without the presence of counsel although the prosecution had reached the accusatory level. Counsel argue that the problems which make a lineup a "critical stage" of the prosecution also apply to such a photographic identification, in view of the opportunity for secrecy, the danger of suggestion, and the difficulty of reconstructing the event.

At one time the Supreme Court used the "accusatory" phase concept for purposes of defining the need for counsel before the police could question a suspect in custody. Escobedo v. Illinois, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The concept receded from view following a more embracing holding in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

While a photographic identification may, indeed, present problems of fairness, the problem is to be considered in terms of whether the identification has been conducted with impermissible suggestiveness, and not by a prophylactic rule requiring the appointment of counsel for one who is not present at the time of identification, has not been arrested for or charged with the crime, and is not in custody. In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968), the Court pointed out, inter alia, the value of a photographic identification procedure in sparing innocent suspects the ignominy of arrest by permitting their exoneration through the use of photographs.[2]

The view of need for counsel at photographic identification expressed in Thompson v. State, Nev., 451 P.2d 704, cert. denied 396 U.S. 893, 90 S.Ct. 189,

1. Mrs. Lockett testified that what she said was that defendant was between 5 and 6 ft., and that he had a "narrow, small face like a woman." She particularly focused on what she called defendant's "cowlicks," but the detective elicited that she meant a receding hair line.

2. In that case the investigation could certainly be said to have already come to focus on Simmons as a prime suspect. We need not consider whether or in what circumstances a right of counsel for photograph identification might be urged as to defendants who have been taken into custody on cause of having committed the offense. Such claims have been rejected in a number of cases. United States v. Conway, 415 F.2d 158 (3d Cir. 1969); United States v. Bennett, 409 F.2d 888, 898–900 (2d Cir. 1969); United States v. Marson, 408 F.2d 644 (4th Cir. 1968, Judge Winter dissenting); McGee v. United States, 402 F.2d 434, 436 (10th Cir. 1968), cert. denied 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969). One of these opinions relies on the analogy that there may also be suggestiveness whenever counsel interviews a witness. The analogy would appear to fall short since the prosecution could not introduce testimony on direct of the statements given by a witness in an earlier interview with prosecutor. In United States v. Hamilton, 137 U.S.App.D.C. 89, 420 F.2d 1292 (1969), this court noted, "Counsel at an identification session designed to narrow the field of suspects, at a time when no one has been charged and there is no one in particular to represent, is an obvious impracticability." (at 1294, n. 6.)

24 L.Ed.2d 170 (1969), was apparently not put forward as an absolute since the court indicated that it would not obtain if the photographs shown to the identifying witness were available at trial. This court has made clear the importance of retaining a record of photographs used for identification in order to rebut any suggestion of suggestiveness.[3] In the case before us the police and proscutor acted responsibly in preserving, and showing to defense trial counsel, the seven photographs shown to Mrs. Lockett.

 Defense counsel did not lodge any objection to admission of the photograph on a claim that there was undue suggestiveness violating the rule of Stovall v. Denno.[4] We see no merit in defendant's objection to the photographic identification.

### III Lineup Identification and Issue of "Substitute Counsel"

Defendant contends there was error in admitting testimony of his identification at a lineup which was conducted without the presence of counsel assigned to represent him.

Defendant was arrested in his home on October 7, and was presented to a judge of the District of Columbia Court of General Session the same day. On October 22, a preliminary hearing was held at which his assigned counsel was present. Pursuant to an order of the District Court appellant was displayed at a thirteen-man lineup on October 29, and was there identified as the robber by Mrs. Lockett. Prior to trial appellant's assigned counsel objected to this lineup identification on the ground that he had not received notice of the lineup and was not present, and that this defect was not cured by the presence of substitute coun-

sel, Mr. Christensen of the Legal Aid Agency. The trial judge overruled the objection and allowed evidence of the lineup identification to be placed before the jury.

United States v. Wade, 388 U.S. 218, 87 S.C. 1926, 18 L.Ed.2d 1149 (1967), which established the right to counsel at a lineup, explicitly contemplates the possible use of substitute counsel. The decision does not make clear, however, the circumstances in which substitute counsel may be employed. The text of the opinion suggests that substitute counsel might be adequate "where notification and presence of the suspect's own counsel would result in prejudicial delay." 388 U.S. at 237, 87 S.Ct. at 1938. The accompanying footnote states that the presence of substitute counsel is adequate if it serves to "eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel."

The Government argues, and the point is not without substance, that there may be considerable advantages in the use at lineup of "substitute counsel," at least in a case like this involving Legal Aid counsel. Such counsel are likely to have expertise in the matter of lineups, what information can and should be available to counsel from the police, what techniques may enhance reliability, etc.[5] And if for any reason there should be need for testimony in behalf of defense at trial as to the circumstances surrounding the lineup, the use of substitute counsel would avoid the predicament of using defense trial counsel as a witness.

On the other hand there may be considerable advantages to defendant in the presence at lineup of his assigned counsel rather than substitute counsel. Thus assigned counsel may be familiar with

---

3. United States v. Hamilton, 137 U.S.App. D.C. 89, 420 F.2d 1292 (1969) (p. 1295).

4. 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

5. We have pointed out that the police should advise the suspect's counsel in advance of "the names of the witnesses who

would attend; * * * and the descriptions of the suspect, if any, which the witnesses had given to the police," and that such counsel "might be allowed to have a role in setting up the lineup and proposing changes to avoid suggestive features." United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969).

particular facts, such as previous identifications and efforts to obtain identifications, and the conditions under which the eyewitness said he made his original observation, that may bear on the reliability of the lineup identification, e. g., in permitting counsel to propose conditions making the lineup a more reliable test of the capacity of the eyewitness to make an accurate identification of the accused. *See* Long v. United States, 137 U.S.App.D.C. 311, 424 F.2d 799 (1969); United States v. Allen, 133 U.S.App.D.C. 84, 408 F.2d 1287 (1969). The presence of assigned counsel at lineup may also enhance the effectiveness of his trial cross-examination of the eyewitness; avoid the danger that assigned counsel will fail to devote the time necessary to reconstruct the lineup situation, by interviewing the substitute counsel; and avoid the risk that there will be only a blurred recollection of specific details by the substitute counsel who participated in a number of lineups within a relatively short period of time.

The question before us is the sufficiency under *Wade* of the provision for counsel at this lineup. Prior to April, 1969, when an Assistant United States Attorney obtained a judicial order requiring the presence at a lineup of a defendant in detention on probable cause,[6] the order would be presented both to the defendant and his attorney, either at the initial presentment or at the preliminary hearing. If assigned counsel failed to attend, the defendant was represented at the lineup by a member of the staff of the Legal Aid Agency. In April, 1969, the Legal Aid Agency decided its lawyers would represent at lineups only defendants to whom they were specifically assigned. In response, a new procedure has recently been adopted whereby an Assistant United States Attorney obtains a judicial order which requires both the defendant and his attorney to attend the lineup.

In the area of lineups it is appropriate to withhold judicial intervention if "legislative or other regulations such as those of local police departments" are effectively implementing constitutional goals. Wade v. United States, *supra*, 388 U.S. at 239, 87 S.Ct. at 1938. The procedures described are sufficient at least on their face to meet this test. Moreover, we think that the governmental interest which may justify the use of substitute counsel includes the use of substitute counsel to meet the possibility of the occasional administrative slipup that may mar a generally acceptable procedure.[7] Experience in the application of these procedures may reveal that general improvements are needed. But we are satisfied that a generally reasonable and responsible effort is being made by the Government to meet the problem. And it is always open in *future cases to undertake consideration of whether, because of inadequate regulations or lax administration, it is necessary to invoke a stricter rule.*

No contention was made that the lineup was held under suggestive conditions. There was testimony that nothing suggestive as to appellant was said to Mrs. Lockett. She identified defendant out of a 13-man lineup. Defense trial counsel did not proffer testimony of Mr. Christensen,[8] or offer any claim that the presence of Mr. Christensen (as substitute counsel) was inadequate to help trial counsel develop an understanding of the conditions of the lineup. A photograph of the lineup was in evidence. The contention being pressed on appeal, that the procedure in use, including the arrangements for backup substitute coun-

6. *See* Adams v. United States, 130 U.S. App.D.C. 203, 399 F.2d 574 (1969); Williams & Coleman v. United States, 136 U.S.App.D.C. 158, 419 F.2d 740 (1969) (en banc).

7. It is possible that there was a slipup in the case at bar because the order for October 29 lineup issued in October, but without a specific date inserted, was issued before defense counsel was assigned.

8. It happens that Mr. Christensen was at the trial although in a different capacity—. as counsel for defendant's father, who was called as a witness.

sel, all went for naught because assigned counsel was not given notice of the line-up, is one that we cannot accept.

Affirmed.