UNITED STATES of America
v.
Calvin L. RANDOLPH, Appellant.

No. 23222.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 27, 1970.

Decided Dec. 22, 1970.

Bazelon, Chief Judge, concurred in part and dissented in part and filed opinion.

Mr. Grant Stetter, Washington, D.C. (appointed by this court), for appellant.

Mr. John O'B. Clarke, Jr., Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

The office of Lea's Green Meadows, Inc. (Lea's), a wholesale food enterprise, was held up and robbed at about 11 A. M. on November 8, 1968 by two men. Appellant Calvin Randolph was subsequently convicted by a jury on two counts and sentenced to a term of imprisonment for robbery and assault with a dangerous weapon. He appeals and we affirm.

## I

■ At trial, the single contested issue was the identification of the accused and the Government presented an abundance of proof that Randolph was the robber in the dark raincoat who participated in the holdup using a sawed-off shotgun.

Otis Davis, a truck driver for Lea's, testified that he had known Randolph for about one or two years, had seen him quite a few times, had been in games with him, they had loaned each other money, and he identified Randolph as the defendant. He further testified that between 10:30 A.M. and 11 A.M. on the day of the robbery he saw Randolph with Anthony McDonald (also later identified as one of the robbers) about two blocks away from Lea's Green Meadows; that Randolph was wearing a dark green or black coat; that Randolph asked him where he was going and he told him he was going back to the plant (Lea's Green Meadows), whereupon Randolph asked if he had any money and Davis said no and they parted going in opposite directions, Davis toward the plant.

Mr. Lea, the proprietor of Lea's Green Meadows, testified he and others in his plant were held up at about 11 A.M. on November 8, 1968, that Randolph was one of the robbers, that the lighting was good in the plant at the time of the robbery, that Randolph first engaged him in conversation from a distance of about two feet before he held him up, that he had a good opportunity to view Randolph at that time and once or twice later in the holdup and that Randolph was not disguised. Later in the day of the robbery, Mr. Lea looked at several albums of pictures of possible suspects shown him by the Robbery Squad but did not identify any of the photographs and also did not identify any of the suspects he saw at Randolph's apartment that same day. Within about a week of the crime, without any assistance, Lea identified a photograph of Randolph

from nine or ten photographs shown to him at that time. He also made a lineup identification of Randolph[1] and McDonald on December 10, 1968 and an in-court identification of Randolph at trial. Mr. Lea further testified that Randolph wore a (a) dark raincoat at the time of the robbery, that he held him up with a (b) sawed-off shotgun and carried away the proceeds of the robbery (over $500) in an (c) El Producto cigar box. These details assumed particular significance as the trial progressed.

Rogers, the shipping clerk at the plant, who was also held up corroborated Mr. Lea's testimony of the circumstances of the robbery, the time of the holdup, the use by one robber of the sawed-off shotgun and that one of the robbers wore a black or dark green raincoat. Rogers, also without any assistance, from about 15 or 20 photographs shown him within the week after the robbery, made a photographic identification of Randolph ("[T]his is him.") as being the robber in the dark raincoat who used the sawed-off shotgun (about two feet long) and made an in-court identification of Randolph. However, Rogers did not attend the lineup on December 10, 1968 when Mr. Lea testified he identified Randolph and McDonald.

Further significant evidence supporting the conclusion that Randolph was one of the robbers was adduced through the testimony of Officer Charles A. Mussomele (a 7-year veteran police officer) who testified that he knew Randolph previously, that on the day of the robbery at about 10:55 A.M. he was cruising in a police car about two blocks away from Lea's Green Meadows when he saw two men walking very hurriedly on the side of the street; they appeared nervous as they kept looking around, their manner aroused his suspicions and he decided to stop them; he cruised to within about 14 feet of them and called to appellant "Calvin" [Randolph] by name to stop but both suspects ran away. He had observed Randolph carry-

---

1. There was conflicting testimony on this point. See pp. 731–732, *infra*.

ing (a) something black under his arm (it looked about the way a black raincoat looks rolled up), and a (b) sawed-off shotgun under the light trench coat he was wearing at that time. Randolph was in the company of the other man who was carrying an (c) El Producto cigar box. Mussomele testified further that he chased the two men but was not able to apprehend them at that time. He made an in-court identification of Randolph and testified that the other man with him was about 21 years old, about 6 feet tall and had a mustache, goatee and light skin. The description fit that of McDonald.

There was thus ample evidence, both direct and circumstantial, that Randolph committed the offenses of which he stands convicted.

## II

The principal issue on this appeal concerns the introduction in evidence of Lea's identification of appellant at the lineup held on December 10, 1968. Specifically, appellant argues that he was not represented by counsel at the lineup and that the introduction of the identification at trial therefore violates the rules enunciated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

On December 10, Lillian Havenner, a bookkeeper at Lea's Green Meadows, and Lea viewed a lineup in which both appellant and McDonald appeared.[2] At the time of the lineup, appellant had not been arrested for the instant robbery and consequently did not have counsel in this case. However, he had been arrested previously on another robbery charge and counsel had been appointed to represent him on that charge. Appellant had been ordered to appear in the December 10 lineup in connection with the second robbery charge and his counsel on the other charge had been notified of the lineup and invited to attend.[3] This he did not do. A lawyer for the Legal Aid Agency, Mr. Christensen, was present at the lineup, however, and testified that he

> was a general representative lawyer there to represent those defendants who were unrepresented by counsel for purposes of that line-up.[4]

Appellant does not contest the fact that Mr. Christensen was present at the lineup but argues instead that Christensen was not representing him for purposes of the lineup. On this issue, the evidence was somewhat ambiguous. Christensen testified twice on the matter, first, at the pretrial hearing held on appellant's motion to suppress Lea's lineup identification and, secondly, at the trial which followed. At the pretrial hearing, his testimony was that he

2. Mrs. Havenner worked in the back room in Lea's Green Meadows and saw only one of the robbers. She testified at trial that the robber she saw had a pistol (not the sawed-off shotgun which the testimony of other witnesses indicated that appellant was carrying), that he wore a brown scarf over his face from his nose down and that one of the men she saw at appellant's apartment shortly after the robbery "looked like the one [she] saw" during the robbery. At the suppression hearing, there was testimony that she identified a person other than appellant or McDonald at the lineup. She made no in-court identification and no testimony was elicited concerning her participation in the lineup.

3. Appellant was exhibited to witnesses in the instant case pursuant to an "Adams"

order issued by the Court of General Sessions. See Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968).

4. Christensen was thus a "substitute" counsel. See United States v. Wade, 388 U.S. 218, 219, 237 n. 27, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Russell v. United States, 133 U.S.App.D.C. 77, 80, 408 F.2d 1280, 1283, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). We have indicated that the right to counsel extends to pre-indictment lineups, such as the one here and have discussed substitute counsel in that context. Mason v. United States, 134 U.S.App.D.C. 280, 282, 414 F.2d 1176, 1178 (1969). See also, United States v. Kirby, 138 U.S.App.D.C. 340, 427 F.2d 610 (1970).

attended a great many lineups, that he had no independent recollection of the instant one and that such testimony as he could give was based *exclusively* on the notes he had contemporaneously written on the separate cards he used to record the circumstances surrounding each lineup.[5] He further testified that he had attended 14 lineups on the night of December 10,[6] that his notes reflected that appellant was present on the stage but that he interpreted his notes to indicate that he "did not conduct a line-up" with appellant and that he "never had [appellant] particularly in mind as the defendant [he] represented." He did, however, represent other persons suspected of participation in the same robbery who were present in the lineup, and made no objection to the lineup itself.[7]

At trial the next day, Christensen modified his pretrial suppression hearing testimony somewhat to indicate that, although his attention was focused on another person in the lineup, he was representing appellant in a "general" way. On his cross-examination, it was also elicited that among the notes he made of the lineups he attended on December 10th was one which had appellant's name at the top of the card relating to lineup 19. He further testified that it was his general practice to place the name of the person whom he was representing at the top of the card on which he wrote his notes concerning the lineup in which that person was involved.

Both at the pretrial hearing and at trial, Christensen testified that his lineup notes indicated that Lea did identify McDonald at the lineup. There was no indication on his notes that Lea had identified appellant, however, and from the absence of such indication, Christensen concluded that Lea had not identified appellant. However, Lea and two detectives who were present at the lineup testified that Lea did identify appellant and the police records of the lineup, which were admitted in evidence, indicated that he had.

Based on the foregoing, we are of the opinion that it was not erroneous for the trial court to conclude that appellant was represented by counsel at the lineup and therefore it was not error for testimony to be admitted concerning Lea's lineup identification of appellant. Since Christensen had no independent recollection of the circumstances surrounding the lineup, great weight must be placed on his contemporaneous notes which recorded certain facts. *See generally* Zassenhaus v. Evening Star Newspaper Co., 131 U.S.App.D.C. 384, 387 n.18, 404 F.2d 1361, 1364 n.18 (1968); United States v. Riccardi, 174 F.2d 883 (3d Cir.), cert. denied, 337 U. S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). The notes themselves were admitted into evidence without objection and, when Christensen's testimony concerning his function at lineups is added to them, we think that it was permissible for the trial court to rely upon them and to conclude that he was representing appellant at the lineup.

The fact that Christensen's notes do not indicate whether or not Lea identified appellant does not alter this conclusion. Obviously it would have been better if Christensen's recollection of the circumstances surrounding the lineup

5. Transcript, Vol. I, at 24:

> Q. You have no independent recollection who the officer was?
>
> A. I have no independent recollection of the line-up.
>
> Q. No independent recollection of the line-up at all?
>
> A. Correct.
>
> Q. Everything you told us came from these notes?
>
> A. That is correct.

6. In Christensen's terms, however, a "line-up * * * [is] when a witness comes in the line-up room and looks at the line-up men." His testimony that he attended 14 lineups does not mean that he attended 14 separate arrays of suspects but merely that 14 separate witnesses looked at the lineups.

7. From the pictures of the lineup, it does not appear to have been suggestive in any way and appellant does not contend here that it was.

were such that he could made a definite statement as to whether Lea did or did not identify appellant. *See* United States v. Wade, 388 U.S. 218, 230, 87 S. Ct. 1926, 18 L.Ed.2d 1149 (1967); Clemons v. United States, 133 U.S.App.D. C. 27, 31, 408 F.2d 1230, 1234, cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L. Ed.2d 567 (1969).[8] However, Christensen could have missed hearing Lea's identification in the general atmosphere surrounding the lineup. Even if his testimony is taken as indicating that Lea did not identify appellant, this testimony would be for the jury to evaluate in determining how much weight should be given to the identification in reaching its ultimate conclusion. *Cf.* United States v. Williams, 137 U.S.App.D.C. 231, 232–233, 421 F.2d 1166, 1167–1168 (1970).

Assuming, however, that appellant was not represented by Christensen, and that the admission of Lea's lineup identification was error, we conclude that the error was harmless.

To summarize the testimony, Randolph was observed, by a person who knew him, near Lea's Green Meadows shortly before it was robbed and was observed, again by a person who knew him, minutes after the crime, about two blocks from the scene of the crime, carrying a sawed-off shotgun, in the company of a person who was carrying an El Producto cigar box, the same brand of cigar box which was taken in the robbery. Mr. Rogers, an employee at Lea's identified Randolph from photographs as being one of the men who robbed him and was able also to identify Randolph in court even though he had not viewed the lineup. In addition, there was testimony of three witnesses that Randolph was wearing a dark raincoat at the time and one testified he was carrying what could have been such a raincoat[9]; the same three witnesses testified that the man with Randolph at the time was McDonald or at least a man who met McDonald's description. The five identifications of appellant (excluding Lea's lineup and in-court identifications) were unequivocal.[10] Finally, Lea had an excellent opportunity to observe appellant under good lighting conditions at the time of the crime and without any assistance selected appellant's photograph from a group of photographs shortly after the robbery. We are of the opinion that his in-court identification of appellant had a source independent of the lineup and was therefore admissible on its own. United States v. Wade, *supra,* 388 U.S. at 240, 87 S.Ct. 1926; Clemons v. United States, *supra,* 133 U.S.App.D.C. at 34, 408 F.2d at 1237.

There was thus strong uncontroverted testimony (appellant did not testify) connecting appellant with the crime and the admission of Lea's lineup identification was cumulative. If the admission of the lineup identification constituted error, based on our evaluation of its impact on the minds of the jury, we conclude that it did not contribute to their verdict and was thus harmless beyond a

8. We express no view on the question of whether, in a different case, a substitute counsel's inability to recall more of the circumstances surrounding a lineup than Mr. Christensen recalled here would meet the constitutional requirement of effective assistance of counsel. In such a case, the questions posed by Judge Bazelon may well be crucial. See page 734 *infra.* Here, however, the only issue raised concerning the events which took place at the lineup was whether Lea did or did not identify appellant. At its strongest, Mr. Christensen's testimony indicates that he did not, thus presenting a jury question.

9. Davis, Lea and Rogers indicated that appellant was wearing the coat and Mussomele said he had it rolled under his arm. Davis and Mussomele knew appellant previously.

10. Davis as to his presence on the street two blocks away from Lea's Green Meadows prior to the robbery; Rogers as to his photographic and in-court identificacions; Lea as to his photographic identification; and Mussomele as to his identification two blocks away from Lea's Green Meadows on the street after the robbery.

reasonable doubt. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Gilbert v. California, *supra*, 388 U.S. at 274, 87 S.Ct. 1951; Chapman v. California, 386 U.S. 18 at 24, 87 S.Ct. 824, 17 L.Ed. 2d 705; Willard v. United States, 421 F.2d 59, 60 (9th Cir. 1969), cert. denied, 399 U.S. 914, 90 S.Ct. 2217, 26 L.Ed.2d 572 (1970); *see* Long v. United States, 137 U.S.App.D.C. 311, 316–317, 424 F.2d 799, 804–805 (1969); Taylor v. United States, 134 U.S.App.D.C. 246, 248–249, 414 F.2d 1142, 1144–1145 (1969); Solomon v. United States, 133 U.S.App.D.C. 103, 106, 408 F.2d 1306, 1309 (1969).

We have carefully examined appellant's other contention and find no error.

Affirmed.

BAZELON, Chief Judge (concurring in part and dissenting in part):

This court was presented with essentially one question on this appeal: was there an adequate basis for the trial judge's determination that Mr. Christensen did realize that he was representing appellant at the station-house line-up? I agree with the opinion of the court that we must answer this question in the affirmative.

On the other hand, for me this answer does not exhaust the issues in the case. The following questions trouble me: (1) Does not United States v. Wade, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), require *effective* assistance of counsel at line-ups? (2) If so, does defendant have the burden of coming forward with affirmative evidence that assistance of substitute counsel was ineffective? (3) Does the Government have the ultimate burden of persuading the judge beyond a reasonable doubt that assistance of substitute counsel was in fact effective? (4) Does a substitute counsel have special obligations to record his observations and opinions of the line-up and to see that trial counsel is given copies of those records before trial? (5) In addition, is trial counsel under an obligation to inquire of substitute counsel concerning the details of the line-up? (6) If neither substitute nor retained counsel has taken steps to communicate with the other, does that failure constitute ineffective assistance of counsel for the purpose of the *Wade per se* rule, so that testimony concerning the line-up may not be introduced by the Government at trial?

While some of these questions are stated in argumentative fashion, I do not pretend to have answers to them. What troubles me is that in this case these questions were not plainly raised by defense counsel below (though I have no doubt that he considers many of them implicit in his objections). As a result, not only is the record barren of testimony directly concerning many of the factual issues, but there are no direct rulings by the trial judge on these issues for us to review. It would be very well for us to affirm this conviction on the ground stated by the court's opinion, except that appellant might well be going to jail while the substitute counsel arrangements at the police station did not meet the constitutional standards. Substitute counsel procedures have been approved by this court only conditionally,[1] and the facts of this case should make us wonder if different rules are not necessary. It is familiar principle that this court, "vested with the penultimate authority and responsibility for the supervision of criminal justice in the District of Columbia,"[2] must carefully examine existing practices to ensure that fundamental rights are not being lost through inadequate procedural safeguards.[3]

1. *See* United States v. Kirby, 138 U.S. App.D.C. 340, 427 F.2d 610 (1970): "Experience in the application of these procedures may reveal that general improvements are needed. * * * And it is always open in future cases to undertake consideration of whether, because of inadequate regulations or lax administration, it is necessary to invoke a stricter rule."

2. Blue v. United States, 119 U.S.App.D.C. 315, 317, 342 F.2d 894, 896 (1964).

3. Ensuring that the opportunity to be assisted by effective counsel is not an empty right has long required careful

Consequently, I would remand this case for evidentiary hearings on the practices of substitute counsel at station-house line-ups, as followed in this case, and for the trial judge to make initial rulings on the constitutionality of the practices he finds.

Remanding would be pointless, of course, if any error discovered were going to be harmless. I must register my dissent, therefore, from the court's alternative holding of harmless error. It is a very close question, because of the weight of evidence against appellant; but where neither the fruits nor the instruments of the crime are discovered in appellant's possession, and where the evidence against him, however strong, consists only of identifications, I cannot say beyond a reasonable doubt that testimony of a line-up identification by the victim of the crime did not persuade an average juror.

judicial attention to the realities of pretrial proceedings. *See, e. g.,* Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964). *See also* Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), another case which raises the substitute counsel question: "In any event, the circumstance lends emphasis to the conclusion that during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, * * * the defendants did not have the aid of counsel *in any real sense,* although they were as much entitled to such aid during that period as at the trial itself." [Emphasis added.]