**UNITED STATES of America**

v.

**Abell HOLIDAY, a/k/a Hampton Holiday, Appellant.**

**No. 24582.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1971.

Decided July 12, 1973.

Clarence A. Jacobson, with whom Albert J. Feigen, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

C. Madison Brewer, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before ROBINSON and WILKEY, Circuit Judges, and CHRISTENSEN,[*] United States District Judge for the District of Utah.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

■ This appeal follows a jury trial and convictions of Abell Holiday, the appellant, on two counts of armed robbery,[1] one count of kidnapping,[2] three counts of assault with a dangerous weapon[3] and one count of carrying a dangerous weapon,[4] all stemming from the robbery of a grocery store in the District of Columbia. The main contentions here are that two Government witnesses made in-trial identifications of Holiday after viewing him at an uncounseled lineup, and that the Government elicited testimony of an identification previously made at the lineup by one of the witnesses, all in violation of the Sixth Amendment's guaranty of right to counsel.[5] After scrutinizing the record, we are persuaded that the claim of error does not warrant reversal. We do find it necessary, however, to vacate two of the convictions for assault.[6]

---

[*] Sitting by designation pursuant to 28 U.S. C. § 292(c) (1970).

1. D.C.Code §§ 22–2901, 22–3202 (1967).

2. D.C.Code § 22–2101 (1967).

3. D.C.Code § 22–502 (1967).

4. D.C.Code § 22–3204 (1967).

5. Holiday also contends that he was denied the effective assistance of counsel at his trial, and that he was deprived of a fair trial by the overzealousness of the prosecutor and bias on the part of the trial judge. We have examined the record carefully and conclude that the first of these claims cannot prevail. See United States v. Hammonds, 138 U.S.App.D.C. 166, 170, 425 F.2d 597, 601 (1970); Harried v. United States, 128 U.S.App.D.C. 330, 333–336, 389 F.2d 281, 284–287 (1967); Bruce v. United States, 126 U.S. App.D.C. 336, 339–341, 379 F.2d 113, 116–118 (1967); Mitchell v. United States, 104 U.S.App.D.C. 57, 63, 259 F.2d 787, 793, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958). We further conclude that, save to the extent pointed out in this opinion, the prosecutor did not exceed the bounds of propriety.

See Taylor v. United States, 134 U.S. App.D.C. 188, 189, 413 F.2d 1095, 1096 (1969). And we find the charge of judicial bias completely devoid of merit.

6. Holiday was convicted of armed robberies of Reginald Green and William Hager and also of assaults with a dangerous weapon upon Green and Hager. We have recently held in United States v. Johnson, 155 U.S.App.D.C. 28, 29, 475 F.2d 1297, 1298 (1973), that where an armed robbery and an assault with a dangerous weapon are committed against the same person, the latter merges into the former. *Id.* at 29 and n. 2, 475 F.2d at 1298 and n. 2. Thus, Holiday's convictions on these two assault charges (counts 3 and 6 of the indictment) must be vacated. There is no need for a remand for resentencing, however, since Holiday was given separate sentences for each offense of which he was found guilty, and all sentences were set to run concurrently. See United States v. Benn, 155 U.S.App.D.C. 180, at 185 & n. 24, 476 F.2d 1127, at 1132 & n. 24 (1972). *Accord,* United States v. Wimbush, 154 U.S.App.D.C. 236, 237–238, 475 F.2d 347, 348–349 (1973). See text *infra* at note 9.

## I

Two men, subsequently identified as Holiday and one Nathaniel Clifton, staged a mid-afternoon holdup of Green's Market, a grocery store at 156 L Street, Southeast. To facilitate a recital of the events culminating in Holiday's arrest and trial, we refer to the holdup men as so identified. Holiday drew a gun and covered the proprietor, Reginald M. Green, his employee, Joan D. Beckwith, and a friend, Bobby Stoddard. Clifton ordered Green to place the money from the cash register on the counter, and demanded that Green and Stoddard empty their pockets. When William Hager, a customer, entered the store, he was threatened by Holiday, who robbed him of his wristwatch. After making use of the store's restroom while Holiday stood guard, Clifton removed a gun and several packs of cigarettes from behind the counter. On instructions from Clifton, Green placed the cash and cigarettes in a bag, whereupon the robbers fled, admonishing their victims not to call the police. In all, the robbery consumed between 15 and 25 minutes.

After departing the store on foot, Holiday and Clifton approached a car stopped at K Street and New Jersey Avenue, Southeast. Clifton asked the driver, William T. Johnson, who was returning home from work, to take them to Fourteenth and R Streets, Northwest. Johnson declined, and Holiday produced his pistol and ordered him to comply. Clifton got into the front seat on the passenger side, and Holiday sat behind him on the right side of the rear seat. Also in the car were Loretta Hedgeman, Annette L. Mackabee and Robert P. Stanback—all co-workers of Johnson, the driver.

Johnson proceeded across the city, finally arriving at Fourteenth and R Streets, Northwest, where the robbers

ordered him to stop. While Holiday remained in the car, Clifton alighted and procured a bottle of scotch from a nearby liquor store; at Holiday's request, he returned to the store for some beer. When Clifton got back into the car, Johnson drove a short distance and was stopped by police responding to a radio-run description of the vehicle and the robbers. The occupants were taken into custody, and a search of the car yielded four one-dollar bills and the bag containing the cigarettes. A subsequent search of Holiday and Clifton turned up two handguns and approximately eighteen dollars in bills and change; a wristwatch was also recovered from Holiday's person. The crosstown trip from the point where the robbers first took charge of the car lasted between 20 and 45 minutes.

Pursuant to an order of the District of Columbia Court of General Sessions,[7] Holiday participated in a lineup four days later. There he was viewed by Green, the proprietor of the grocery store, and Ms. Beckwith, his employee.[8] The lineup order reflects that it was served on Holiday's counsel, but he did not attend the lineup, and there is no indication that Holiday was represented by substitute counsel.

A grand jury later returned a sixteen-count indictment against Holiday and Clifton. The latter entered a plea of guilty to multiple counts of robbery, and testified for the Government at Holiday's trial. The other Government witnesses included Green, Ms. Beckwith and the four occupants of the commandeered auto, all six of whom positively identified Holiday as Clifton's accomplice. The jury found Holiday guilty on seven of the counts charged.[9] The trial judge imposed concurrent sentences of ten to thirty years for the armed robberies, ten to thirty years for the kidnapping, three

7. Now the Superior Court of the District of Columbia. D.C.Code § 11–901 (Supp. V 1972).

8. As is later mentioned, Green identified Holiday at the lineup and at trial. The

record does not disclose whether Ms. Beckwith identified him at the lineup, although she did at trial.

9. See text *supra* at notes 1–4, and note 6, *supra*.

to ten years for the assaults, and one year for carrying the gun. This appeal followed.

## II

■ The source of Holiday's contention that reversible error was committed at his trial is the alleged invalidity of the lineup. In United States v. Wade,[10] the Supreme Court held that a pretrial lineup is a critical stage of the prosecution at which the Sixth Amendment guarantees the accused the assistance of counsel.[11] At Holiday's preliminary hearing, in response to a question by the presiding judge, it was ascertained that neither his counsel nor counsel for his accomplice had attended the lineup.[12] While effective assistance by substitute counsel would have sufficed to comply with the *Wade* mandate,[13] and although the police department apparently records

the names of attorneys representing individuals placed in lineups, there is no evidence that Holiday in fact had substitute counsel at his lineup.[14] With the situation in this uncertain state, we could not appropriately rest upon the speculation that Holiday was probably represented by substitute counsel. Given the gravity of the constitutional safeguard involved here, we must afford Holiday the benefit of the doubt on this point and base our analysis on the *assumption* that he was not aided by counsel at his lineup.[15]

■■ Where a lineup of an accused unassisted by counsel has been conducted, two considerations arise with respect to the subsequent introduction of identification testimony at trial. The first is that an in-court identification during the trial by a witness who viewed the accused at the flawed lineup must be

10. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

11. *Id.* at 237, 87 S.Ct. 1926.

12. Holiday's counsel indicated at the preliminary hearing that he had not attended the lineup, but he knew from Green's testimony at the preliminary hearing that his client had been identified at the lineup.

13. The question of substitute counsel was left open in *Wade*, 388 U.S. at 237, 87 S.Ct. 1926, but we have given our approval to the use of substitute counsel at lineups. *E. g.*, United States v. Neverson, 150 U.S.App.D.C. 133, 140, 463 F.2d 1224, 1231–1232 (1972) ; United States v. Kirby, 138 U.S.App.D.C. 340, 343–344, 427 F.2d 610, 613–614 (1970). The practice is not without its potential hazards, however, particularly where substitute counsel fails to communicate with the accused's regular lawyer prior to trial. Compare United States v. Johnson, 147 U.S.App.D.C. 31, 34–35, 452 F.2d 1363, 1366–1367 (1971) and Marshall v. United States, 141 U.S.App.D.C. 1, 4, 6 n.18, 436 F.2d 155, 158, 160 n.18 (1970) with United States v. Smallwood, 153 U.S.App. D.C. 387, 389–390, 473 F.2d 98, 100–101 (1972). See United States v. Randolph, 143 U.S.App.D.C. 314, 316–318, 443 F.2d 729, 731–733 (1970) ; United States v. Garner, 142 U.S.App.D.C. 15, 16–17, 439 F.2d 525, 526–527 (1970), cert. denied, 402 U.S. 930, 91 S.Ct. 1531, 28 L.Ed.2d

864 (1971). Compare United States v. Jones, 155 U.S.App.D.C. 328, 336–338, 477 F.2d 1213, 1221–1223 (1973).

14. There is no contention that the lineup was unduly suggestive or otherwise faulty. See Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

15. This approach to a situation where the evidence is unclear on representation by counsel at the lineup was employed by this court in United States v. Randolph and United States v. Garner, both *supra* note 13. In *Randolph*, the court proceeded, as we do here, on the assumption that the appellant was not assisted by counsel at his lineup, but it concluded on the basis of the record that references to the lineup at his trial were harmless error. 143 U.S.App.D.C. at 318–319, 443 F.2d at 733–734. In *Garner*, the court also assumed that the appellant had been denied his *Wade* right, but since there was no direct testimony at trial concerning the lineup, the court's only task was to determine whether an independent source existed to support in-court identifications by the lineup witnesses. 142 U.S.App.D. C. at 17–18, 439 F.2d at 527–528. Here we combine the *Randolph* and *Garner* approaches since we must deal both with in-court identifications by the lineup witnesses and statements at trial concerning the lineup.

shown, by clear and convincing evidence, to have a source independent of the line-up—stemming from a high-caliber opportunity to view the accused at the time of the crime.[16] At Holiday's trial, the two witnesses who had previously picked him at the lineup as one of the robbers were permitted to identify him as such from the witness stand. Where an unsuccessful challenge is made to a lineup, the preferred procedure is for the trial court to make a finding, at the time it rules on the challenge, as to whether an independent source exists to support an in-court identification by the lineup witness at trial,[17] whether or not that is the basis for the ruling. That procedure was not followed here because no motion to suppress in-trial identifications was made by Holiday's trial counsel before or during the trial.[18]

■ The second consideration springing from an uncounselled lineup is that evidence of an identification of the accused made at the invalid lineup may not be introduced by the Government in the first instance.[19] The accused may, if he chooses, show the events transpiring at a faulty lineup,[20] and if he does the Government, of course, is entitled to respond.[21] But unless the accused initiates the subject, evidence of the identification is per se inadmissible, and unless constitutionally harmless is reversible error.[22] In the case at bar, the Government did refer to one of the lineup identifications after cross-examination of

one of its witnesses had inadvertently brought to light the fact that there had been a lineup.

Thus we are confronted with two problems. One is whether the record demonstrates sufficiently that each of the two in-court identifications by witnesses who had attended the apparently uncounselled lineup was based upon an independent source. The other is the propriety of the Government's references to the lineup identifications and, if improper, whether reversal is warranted. To these matters, in that order, we now proceed.

### III

■ Upon a careful analysis of the record, we find that it establishes, clearly and convincingly, an independent source for the identifications of Holiday at trial by Reginald Green and Joan Beckwith, the two witnesses who viewed him at the lineup. In Wade,[23] the Court isolated several factors to be evaluated in determining whether a particular identification stems from events other than an illegal pretrial confrontation.[24] Among these are the witness' prior opportunity to observe the criminal act and the party committing it; the existence of any discrepancy between any description of the perpetrator given by the witness and the accused's appearance; any identification by the witness of someone other than the accused; any identification of a photograph of the ac-

---

16. United States v. Wade, *supra* note 10, 388 U.S. at 240–241, 87 S.Ct. 1926.

17. This procedure is outlined in detail in Clemons v. United States, 133 U.S.App. D.C. 27, 34, 408 F.2d 1230, 1237 (en banc 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

18. See Fed.R.Crim.P. 52(b). And see text *supra* note 15.

19. Gilbert v. California, 388 U.S. 263, 273, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Clemons v. United States, *supra* note 17, 133 U.S.App.D.C. at 34, 408 F.2d at 1237.

20. We have held, where a pretrial confrontation has been deemed unduly suggestive, that the defense may decide as a matter

of tactics to bring it to the jury's attention in order to reduce the weight the jury might give to the witness' in-court identification. Clemons v. United States, *supra* note 17, 133 U.S.App.D.C. at 34, 408 F.2d at 1237. Assuming a defense strategy to be served, there is no reason why the same thing may not be done where the accused was unassisted by counsel at the lineup.

21. *Id.* at 43, 408 F.2d at 1246.

22. Gilbert v. California, *supra* note 19, 388 U.S. at 273–274, 87 S.Ct. 1951.

23. United States v. Wade, *supra* note 10.

24. 388 U.S. at 241, 87 S.Ct. 1926.

cused; any failure by the witness to identify the accused prior to the in-court identification; and the lapse of time between the criminal act and the identification.[25] Our own decisions have isolated a similar set of relevant criteria.[26]

Scrutinizing first the opportunity of witnesses Green and Beckwith to view the gunman at the time of the offenses, we note that the robbery took place during the daylight hours in a store lit by two banks of fluorescent tubes.[27] The man with the pistol stood facing Green and Ms. Beckwith across the counter during the entire episode, which lasted some 15 to 25 minutes.[28] After the crimes, Green gave descriptions of both robbers to the police, including details of their builds, facial appearances and clothing,[29] and at trial both witnesses recounted some details of their descriptions. Moreover, Holiday is a distant cousin of Ms. Beckwith, who had known him for five years and had recognized him immediately when he entered the store.

Both witnesses were cross-examined at trial as to their opportunities to observe the robbers but their identifications were not shaken. No discrepancy was shown in any descriptions they gave; nor does the record reflect any misidentification on their part or failure to recognize Holiday on any occasion as the man who pointed the gun at them. Green did not recall that he had ever been shown a photograph of Holiday, and Ms. Beckwith was not asked whether she had viewed any photographic display. The lapse of time between the holdup and the trial was approximately 14 months.

■ On balance, giving careful consideration to the circumstances in light of the criteria suggested in *Wade*[30] we conclude that the record demonstrates clearly and convincingly[31] that the identification of Holiday at trial by the two lineup witnesses was amply sustained by their observation of him during the robbery independently of whatever recollection they might have had from the tainted lineup. Thus, the in-court identifications were proper.

## IV

The trial transcript reveals that four times the lineup was mentioned at Holiday's trial. The first reference to it was a gratuitous comment by the store proprietor, Reginald Green, while being cross-examined by defense counsel concerning his viewing of certain photographs.[32] Following the witness' statement that he had attended a lineup, and his response to a subsequent inquiry by defense counsel indicating that the

25. *Id.*

26. United States v. Kemper, 140 U.S.App. D.C. 47, 50–52, 433 F.2d 1153, 1156–1158 (1970), and cases there cited.

27. Compare United States v. Sanders, 156 U.S.App.D.C. 210 at 212, 479 F.2d 1193 at 1195 (1973); United States v. Kemper, *supra* note 26, 140 U.S.App.D.C. at 51 & n.27, 433 F.2d at 1157 & n.27.

28. Compare United States v. Sanders, *supra* note 27, 479 F.2d at 1196 & n.2 (between five and ten minutes); United States v. Kemper, *supra* note 26, 140 U.S.App.D.C. at 51 & n.28, 433 F.2d at 1157 & n.28.

29. Compare United States v. Sanders, *supra* note 27, 479 F.2d at 1195–1196; United States v. Kemper, *supra* note 26, 140 U.S.App.D.C. at 51 & nn.29, 30, 433 F.2d at 1157 & nn. 29, 30.

30. United States v. Wade, *supra* note 10, 388 U.S. at 241, 87 S.Ct. 1926.

31. Where the Government seeks to elicit in-court identifications following a constitutionally impermissible confrontation it must demonstrate by "clear and convincing evidence" the existence of an independent source. *Id.* at 240, 87 S.Ct. 1926.

32. During cross-examination, Holiday's counsel inquired of the witness:
Q. Were you ever shown any photograph of either Mr. Clifton or Mr. Holiday? A. Photograph? I went to a lineup.
Q. But were you ever shown a photograph of either of them before the line-up? A. I don't remember.
Q. Have you even seen a photograph of either of them? A. I can't say that I have.

robbery and lineup had occurred over a year before,[33] the prosecutor asked him on redirect examination whether he had recognized anyone at the lineup, and the witness answered that he had identified Holiday and his accomplice.[34] Somewhat later, when Holiday himself was on the stand, the prosecutor again brought up the lineup in cross-examination seeking to impeach Holiday's claim that he had never seen Ms. Beckwith before.[35] The final mention of the lineup was a reference to it by the Government in its rebuttal argument.[36]

To justify the questions propounded to Green on redirect concerning the lineup, the Government advances the theory that once the witness referred to the lineup in responding to defense cross-examination, in effect the door was open under *Clemons v. United States*[37] for the Government to clarify the matter of the lineup in its redirect examination. *Clemons* is inapposite here, since it speaks to the situation where defense counsel purposely elicits testimony concerning an invalid lineup,[38] as opposed to the case such as this where the Government's witness brings up the topic himself. Moreover, the prosecutor undertook on redirect examination to "clarify" the witness' volunteered remark—which was simply that he had attended a lineup[39]—by showing that the witness had identified Holiday as one of the culprits;[40] he again alluded to the lineup in cross-examination of Holiday;[41] and he made effective use of Green's lineup identification in argument to the jury.[42] That course of conduct was clearly a violation of *Gilbert v. California*,[43] and no support can be found for it in *Clemons*.[44]

 Forced as we are to assume that Holiday's lineup contravened the Sixth Amendment,[45] and now accepting the necessary corollary that the prosecutor's development of one of the identifications thereat and mention of it in closing argument breached the mandate of

---

33. Continuing his questioning about photographs Holiday's counsel asked:

 Q. I will show you what is marked as Defendant's Exhibit Number 2, and ask you if you can identify the photograph?

 The Court: You mean as to whether he has seen it before?

 [Defense Counsel]: Whether he has ever seen it before.

 The Court: Have you ever seen that one before?

 The Witness: I have seen the person but I don't remember seeing the photograph. Like I say, this has been over a year ago.

 Q. Very well, thank you. You say it has been over a year. What has been over a year? A. The robbery and pretrial and line-up has all been over a year.

34. On redirect examination, the prosecutor queried:

 Q. You were asked about a line-up. Did you go to a line-up? A. Yes.

 Q. Did you recognize anybody at the line-up? A. I identified Mr. Clifton and Mr. Holiday.

35. During his cross-examination of Holiday, the prosecutor asked him the following:

 Q. Well now, after you were arrested, sir, you were placed in a line-up, weren't you? A. Yes, sir.

 Q. Do you remember Joan Beckwith coming to the line-up and identifying you? A. No, sir, I don't know her coming to the line-up.

 Q. How about Reginald Green, do you remember him coming? A. No, sir.

 Q. But you were in a line-up? A. Yes, sir.

 Q. Along with Clifton? A. Yes, sir.

36. In his rebuttal argument, the prosecutor made the following statement:

 The only ones charged were Clifton and Holiday. And they are the very ones who were identified at line-ups . . . .

37. *Supra* note 17.

38. 133 U.S.App.D.C. at 34, 43, 408 F.2d at 1237, 1246.

39. See note 32, *supra*.

40. See note 34, *supra*.

41. See note 35, *supra*.

42. See note 36, *supra*.

43. *Supra* note 19, 388 U.S. at 273, 87 S. Ct. 1951.

44. *Supra* note 17, 133 U.S.App.D.C. at 45, 408 F.2d at 1248.

45. See text *supra* at note 15.

*Gilbert,* we must determine whether the admission of this impermissible material was prejudicial or merely harmless error.[46] The test to be applied was set forth by the Supreme Court in Chapman v. California,[47] which holds that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[48] In applying this test we must, as the Court noted in Harrington v. California,[49] base our judgment "on our own reading of the record and on what seems to us to have been the probable impact of the [tainted evidence] on the minds of an average jury."[50] Keeping these principles in mind, we review the Government's case against Holiday.

The first two Government witnesses, Reginald Green and Joan Beckwith, positively identified Holiday as the man who held a gun on them during a robbery of 15 to 25 minutes duration. Not only did these two witnesses have an excellent opportunity to observe the gunman,[51] but Ms. Beckwith was a distant relative of Holiday and had known him for about five years. The next four witnesses called by the prosecutor were the driver and passengers from the automobile commandeered by the robbers for their crosstown flight. These four also positively identified Holiday as the man who stuck a pistol through the rear window and occupied the right rear seat in close proximity to them during the drive to Fourteenth and R Streets, which consumed at least 20 minutes. The next Government witness, Metropolitan Police Officer Donald Borden, related in detail how he observed the suspected getaway vehicle on Fourteenth Street and watched as Clifton, who fit the radio-run description of one of the robbers, emerged and made two trips to the liquor store. Officer Borden further revealed that searches of the car and of Holiday and his accomplice turned up the proceeds of the crime. Culminating the Government's presentation was the testimony of Holiday's accomplice, Nathaniel Clifton, who recounted in detail how the two had met, planned the offense and carried it out.

Against this inundation of incriminating testimony, Holiday offered the jury only his version of what happened. According to it, he was the victim of a mistake, which came about when he met Clifton emerging from the liquor store at Fourteenth and R Streets and accepted the latter's invitation to join him and the four persons in the car on the representation that they were on their way to a party. Holiday claimed he sat in the front seat of the car, denied having a gun on his person when arrested, and accused the police of framing him.

To say the least, the evidentiary balance reflected by the record before us is heavily weighted on the side of the Government. This is certainly not a case where the few comments at trial about the invalid lineup, to which we have adverted, can be said to have tipped an evenly poised set of scales in the prosecution's favor. Nor is it a case where it could be said that the comments, in relation to the case as a whole, were likely to exert any significant influence on the outcome. On the contrary, in the face of the overwhelming evidence of guilt, we perceive no sensible alternative to a conclusion beyond a reasonable doubt that the error complained of did not contribute to the verdict rendered against Holiday.[52]

46. See United States v. Randolph, *supra* note 13, 143 U.S.App.D.C. at 318, 433 F.2d at 733.

47. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

48. *Id.* at 24, 87 S.Ct. at 828.

49. 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284 (1969).

50. *Id.* at 254, 89 S.Ct. at 1728.

51. See text *infra* at notes 27–29.

52. Chapman v. California, *supra* note 47, 386 U.S. at 24, 87 S.Ct. 824. See United States v. Randolph, *supra* note 13, 143 U.S.App.D.C. at 318–319, 443 F.2d at 733–734; United States v. Green, 141 U.S.App.D.C. 136, 138–139, 436 F.2d 290, 292–293 (1970); Marshall v. United States, *supra* note 13, 141 U.S.App.D.C. at 5–7, 436 F.2d at 159–161.

To summarize, even assuming that Holiday was not afforded the assistance of counsel at his lineup, we conclude that an independent source supported his identification at trial by the two lineup witnesses, and that the references to that confrontation at trial constituted harmless error. The convictions on all but two counts of assault,[53] are accordingly

Affirmed.